No. 72.—James McGinnis and Stephen McGinnis *vs.* John McGinnis. In error.

If a testator should bequeath a negro belonging to his son A to his sons B and C, and should, in the same will, give to his son A a legacy of $500, A will be put to his election, which he will take; and he will be compelled, by a decree in equity, either to relinquish his title to the slave, or the bequest under the will.

It is sufficient to waive a case of election, that the testator does dispose of property *which is not his* own.

The doctrine of election does not apply to *residuary legatees* as *such.* The same individual may, however, be both a *specific* and *residuary legatee.*

There is no time prescribed, within which either party shall claim the right of putting the other to election. Each case must depend upon its own circumstances.

Where the recusant legatee has already received a part or the whole of the bequest under the will, and subsequently recovers property under his independent title, which has been bequeathed by the testator to a third person, he will be decreed either to refund the money, or restore the property.

This was a bill in equity, tried in the Superior Court of the county of Gwinnett, before Judge Dougherty, at March Term, 1846.

The bill was filed by the plaintiffs in error against the defendant, returnable to the September Term, 1843, of said Superior Court, and charged, that on the 10th day of December, 1843, one James McGinnis, Senr., then of said county, made and published his last will and testament, as follows:

"In the name of God, amen! I, James McGinnis, Senr., of the State of Georgia, and county of Gwinnett, considering the uncertainty of this mortal life, and being of sound disposing mind and memory, (blessed be Almighty God for the same,) do make and publish this, my last will and testament, in manner and form following: that is to say, 1st. I will and bequeath unto my beloved wife, Elizabeth, the use of my plantation, and house, and household furniture, on the lot where I now reside, and the labor of my two slaves, Winney and Harry, and my mule Jinney, during her lifetime; also two choice cows and calves, and a choice heifer and steer, five choice fattening hogs, and one choice sow and pigs, and eight shoats, and fifty barrels of corn, and twenty-five bushels of wheat, and two choice ewes, and two choice wethers, in lieu of her dower, and it is also my will and desire, that my daughter Margaret share equally in the above bequests during her mother's lifetime, if she continue to live with, and take care of her mother. Secondly: I will and bequeath unto my son, James McGinnis, all that tract or parcel of land, known as lot number five hundred and thirteen, in the first district and first section of originally Cherokee, now Forsyth county, to have and to hold the same, containing forty acres more or less, to the only free use, benefit and behoof, of him, the said *James McGinnis*, his heirs and assigns forever, in fee simple.

Thirdly. I will and bequeath unto my son, *Stephen McGinnis*, all that tract or parcel of land, known as fraction number sixty-six, in the first district and first section of originally Cherokee, now Forsyth county, containing twenty-six acres, more or less, to have and to hold unto the said Stephen, his heirs and assigns forever, in fee simple.

Fourthly. I will and bequeath unto my daughter Margaret, my young mare, and three negro slaves, to wit: Violet and her two children, Lewis and Phil, to the only free use and benefit of her, the said Margaret, her heirs and assigns forever.

Fifthly. I will and bequeath unto my two daughters, Elizabeth Sailors and Keziah Fitzpatrick, the sum of five hundred dollars each, to be paid to each of them personally, for the sole and exclusive benefit of each of them and their heirs; and to my daughter Nancy Jenkins, I will and bequeath the sum of one hundred and fifty dollars; and to my three sons, William McGinnis, Alexander McGinnis, and *John McGinnis*, I will and bequeath the sum of five hundred dollars each; all the several sums named to be paid by my executors within two years from the date of my decease.

Sixthly. I will and desire that all the balance of my property, after paying the above bequests, and all my just debts, and the expenses of a decent burial, be equally divided between my two sons, *James McGinnis* and *Stephen McGinnis*, viz: one hundred and twenty-five acres of land, more or less, being part of lot number two hundred and thirty-seven, in the seventh district of Gwinnett county, and lots number one thousand sixty-one, and one thousand and fifty-eight, in the second district and

32

first section of originally Cherokee, now Forsyth County, containing each forty acres, more or less; and my slaves Ben, *Booker*, Sam, Wilborn, Jinny, Charlott, Dinah, and her daughter Winney, to have and to hold all and singular the said property, as also my two slaves Winney and Harry, and the mule Jinney, at the death of my wife Elizabeth, to the only free use and benefit of the said James and Stephen, and their, and each of their heirs and assigns forever, in fee simple, after paying the above-named bequests. Also, I will and desire all the balance of my property, consisting of live stock, working tools, books, notes, accounts, and ready money, and all other property of which I may die possessed, be equally divided between my two sons, *James McGinnis* and *Stephen McGinnis*, and I do hereby constitute and appoint my two sons, *James McGinnis* and *Stephen McGinnis*, executors of this my last will and testament; hereby revoking all former wills by me made. In testimony whereof, I have hereunto set my hand and seal, the tenth day of December, one thousand eight hundred and thirty-eight." The words "in lieu of dower," were interlined before signing, &c.

Upon the death of the testator, which occurred shortly thereafter, this will was admitted to probate and record, and the executors therein named qualified.

The bill further charged, that, previous to the September Term of the Superior Court of said county, 1840, the plaintiffs in error had, at four several times, paid John McGinnis one hundred and thirty dollars of his legacy of five hundred dollars. And that afterwards, on the 23d day of October, 1840, the plaintiffs in error, in consequence of a promise made by John McGinnis, that he would come to a fair settlement with them, and receive no more than his equitable share of the estate, according to the will, paid him the further sum of fifty-two dollars toward his legacy, all which payments were made by James McGinnis, and receipts therefor were taken in his name; and that John McGinnis, at the sale of the perishable property of the estate, purchased thereof to the amount of ninety-two dollars, and gave his note, payable to James McGinnis individually, therefor, with an express verbal understanding that the same should also go as part payment of his legacy. That John McGinnis commenced his action of trover returnable to the September Term, 1840, of the Superior Court of said county, against James McGinnis, for the recovery of *Booker*, willed to complainants. And at the March term of said court, 1843, recovered the sum of eight hundred dollars, with the liberty to the defendant to discharge the same by delivering to the plaintiff said slave *Booker*, within fifteen days from that time, and also the sum of two hundred and forty dollars for the hire of said negro, and costs of suit. That the verdict and judgment had been fully complied with, and discharged. That *Booker* had been in the possession of the testator for many years previous to his death; and that the complainants believed that the title to said slave was in their testator at the time of the making of said will, and at the time of his death; and that on the faith thereof, they had accepted the legacy bequeathed to them in the will, and had taken upon themselves the burthens therein imposed, and undertaken the payment of the legacies therein appointed, out of said property to them bequeathed; and that

McGinnis et al. *vs.* McGinnis.

the complainants did not know that John claimed title to said slave until after they had paid him said four first payments, and taken his note as aforesaid, and commenced paying the legacies to the other general legatees. And that afterwards, John McGinnis commenced his action of assumpsit, returnable to the September Term of the Superior Court of said county, eighteen hundred and forty-one, against complainants, for the recovery of the whole of said legacy of five hundred dollars. And that the cause was still pending on appeal. That John McGinnis was unable, from pecuniary embarrassments, to respond to said complainants, should he be permitted to recover said legacy in full from them at law, and that he refused to allow the five receipts, and said notes as offsets in the action of assumpsit. The bill prayed that John McGinnis should be perpetually enjoined from the further prosecution of his action of assumpsit, and that he be decreed to refund the complainants the several sums so paid him, as parts of his legacy, and the amount of said note, with interest, or to return to the complainant the boy *Booker*, with said sums so paid him for hire, &c., upon complainants paying to him the balance of said legacy, (should any be found due.)

The answer of the defendant admitted all the material charges above mentioned, with the exception of the promises made at the time of the payment of the last sum mentioned, of said legacy.

The cause was submitted to the jury on the bill and answer, with the exhibits thereto, and the parol testimony of Isaac Gilbert, who proved that he was acquainted with the slaves of the testator in his lifetime; that he had *Booker* in his possession for several years previous to his death, and that he had no other negro of that name, so far as witness knew: whereupon, the court below charged the jury that the principle of forcing legatees to make an election was purely an equitable right; that at common law the defendant was entitled to both the pecuniary legacy and the boy *Booker*, if he could show his title to the negro. That the bill sought, on principles of equity, to compel the defendant to elect either to take the boy and give up the legacy of $500, or take the legacy and return the negro with the hire which he had before recovered in an action of trover. That the jury should inquire and determine whether, from the whole will, the testator intended that the defendant should take the $500 legacy, or the boy, and not both; that if they found the former to be his intention, then the defendant would be put to his election, unless relieved upon some other principle. The court below further charged the jury, that the principle of election could not be enforced in favor of residuary legatees; that it applied only to specific legatees, and was adopted on the principle of remunerating the legatee, disappointed by the claim of his legacy by some other legatee, under the will. That they should decide, from a consideration of the whole will, whether the complainants were residuary or specific legatees; that in arriving at a conclusion upon this point, they would take into consideration the fact that the complainants had specific legacies given them in former parts of the will, as any other facts appearing on the face of the will, either from its language or other clauses; that if they found the complainants to be residuary legatees, then they had no right to put the defendant on his election, and they should find for the defendant. That if they found the intention of the testator to be

to put the defendant on his election, and that the complainants are specific legatees, then they should find for the complainants, unless some other principle intervened. That so far as the acts of the defendant showed any intention to elect, they were in favor of the $500 legacy. The complainants, who are executors of the testator, had assented to the five hundred dollar legacy, and had paid defendant a part thereof, before defendant claimed the negro ; that even after he had commenced the action of trover, they paid fifty-two dollars of the legacy ; that they resisted his claim to the negro, and forced him to incur large expense in obtaining his property ; that coming into a court of equity, they should show that they had done equity ; that to force the defendant to make his election, they should show a case where he could elect free from any restraint from extraneous circumstances. That the complainants had no right to resist the title of the defendant to the negro to their utmost, and wait till he had expended large sums in costs, in prosecuting his claim ; that they had no right to take the benefit of the chances in litigation, in the action of trover, and failing there, they should seek to put the defendant to his election. That the complainants, if they had a right to force an election, had come too late ; that they should have called on the defendant to make his election in equity, while he could do so on equal and fair terms. That the complainants had paid the defendant a part of the legacy before the action of trover was commenced ; that at law such payment was legal and voluntary ; and that even if defendant were put to his election, the complainants could not recover back the money so paid. The jury, under said charge, found for the defendant. Whereupon, the plaintiffs in error excepted to the decision and charge of the court below, and alleged error therein as follows :

1st. The court erred in charging the jury that they should determine whether it was the intention of the testator to put the defendant to his election.

2d. That they should find whether complainants were specific or residuary legatees.

3d. That if complainants were residuary legatees, they had no right to put the defendant on his election.

4th. That the complainants came into equity too late ; that they had no right to resist the claim of the defendant to the negro at law, and failing there, then to seek to put him to his election in equity.

5th. That the complainants could not recover back the part of the legacy by them paid the defendant, before the action of trover was commenced, &c.

James P. Simmons, for the plaintiffs in error, made the following points, and insisted that the court below erred in charging the jury.

1st. That the jury should determine whether it was the intention of testator to put the defendant to his election.

This, we insist, is an inference of law, enforced in equity upon the facts, admitted or found.

2d. That they should find whether complainants are specific or residuary legatees.

This, we insist, is a question of law for the determination of the court.

3d. That if complainants were residuary legatees, they had no right to put the defendant on his election.

We insist that the true question is, whether the negro slave in dispute, Booker, was bequeathed to complainants and plaintiffs in error as a specific, general or residuary legacy.

4th. That the complainants came into equity too late ; that they had no right to resist the claim of the defendant to the negro at law, and failing, then to seek to put him to his election in equity.

Plaintiffs in error insist that they were not bound to put defendant on his election until the estate and title to the negro was ascertained. That this is a case of implied election, growing out of the verdict of the jury, finding the negro Booker to be the property of defendant.

5th. That the complainants could not recover back the part of the legacy by them paid the defendant, before the action of trover was commenced, &c.

We insist, that they should recover such payments back, (if defendant retains the negro,) upon the ground that they were made by plaintiffs in ignorance of their rights and liabilities.

The counsel submitted, in support of their position, the following authorities :— Story's Commentaries on Equity, 2d ed. vol. 2, top page, 335, et seq., tit. Election, and Satisfaction ; Roper on Legacies, 1st Amer. ed., vol. 2, tit. Election, page 378 et seq. ; Williams on Exrs. and Admrs. 1033, et seq. ; Whistler vs. Webster, 2 Vesey, Jr. 371-2 ; Lady Cavan vs. Pulteney, ib. 558 et seq. ; Wilson vs. Lord John Townsend, ib. 695-6 ; Tomlin. Law Dic., vol. 1, tit. Election, 627, and authorities there cited.

GREEN B. HAYGOOD and JOHN R. ALEXANDER,

Insisted that this is not a proper case for the application of the doctrine of election.

1st. Because such an intention is not expressed in the will or clearly implied.—2 Roper on Leg. 389 ; 2 Story Eq. 349.

2d. Because the necessary accounts have never been taken so as to enable the defendant to elect with a full knowledge of all his rights, and that complainants came too late to put defendant to his election, after having resisted his title to the negro Booker, and compelled him to assert his paramount title at law.—2 Rop. on Leg. 395 ; 2 Story E. 359 ; 1 Bailey's Eq. Rep. 324, 330.

3d. Because the complainants cannot call upon the defendant to elect between his specific legacy and his own paramount title to Booker, they being residuary legatees under the will, and not entitled to call upon anybody to elect:—2 Roper, 433 ; 2 Vesey, Jr. 544, 561. As to what constitutes them residuary legatees under the will, vide 1 Hill C. R. 308 ; 1 Russell, 26 ; 2 Roper on Leg. 457.

4. Because the testator had a present interest in the negro, to wit, the possession, the devising of which to the residuary legatees is not inconsistent with the paramount title of the defendant.—2 Story Eq. 352 ; 1 Vesey, Jr., 515, 523.

5th. Because the claim of the defendant to the legacy is not inconsistent with the provisions of the will in favor of the complainants, as illustrated by the common cases of legacies to widows, entitled to dower by law.—2 Roper, 415-16-17 ; 2 Story, 350-1-2 ; J. C. R., 447, and cases there cited.

JUNIUS HILLYER, for the plaintiffs in error, in conclusion, was stopped by the court as he was about to proceed.

*By the Court—*LUMPKIN, Judge.

Before examining specifically, and in their order, the several positions assumed by the plaintiffs in error, I would remark, that the doctrine of *election* is somewhat new in our courts. Like much of our jurisprudence, it is derived from the civil law ; and is founded in good sense. It allows no person to accept and reject the same instrument. If he accepts a ben-

efit under a deed or will, he must not decline the burden which it imposes, or this would be to defeat and defraud the design of the donor. He must adopt *the whole*, conforming to all its provisions, and renouncing every right inconsistent with it.—2 *Story's Eq.* sec. 1077.

There are cases of express or positive election, as that of *Wilson* vs. *Arny.*—2 *Dev. and Bat. Eq. Cas.* 376. The testator of the plaintiff duly made and published his will, whereby he gave and devised to his son, " Christy Arny, his heirs and assigns for ever, the plantation whereon he then resided ; but if he should make choice of the lot in Lincolnton, in preference to my home plantation, my will is, that he shall have the same in fee simple. In that case I will and direct my executor to sell my said plantation, and the proceeds to go in discharge of the money legacies herein bequeathed. But if my son Christy should elect to keep my home plantation, in that case the said lot shall be sold, and the sum arising therefrom go to the discharge of said legacies."

Here was a clear case of election created expressly by the testator himself. Accordingly it was decreed—that the legatee, Christy Arny, must renounce the plantation devised to him, unless, within a reasonable time, he declares his election before the master to keep it; and in that case join in the sale and conveyance of the Lincolnton lot for the purposes of the will.

But there are cases also of implied or constructive election, as that of *Key* vs. *Griffin*, 1 *Rich. Eq. Rep.* 67. Here the husband bequeathed to his wife and her heirs a plantation, slaves and some other property ; and also, two thousand dollars to be made of his estate. He then gave all the residue of his property, after the payment of his debts, to his children. The two thousand dollars in money bequeathed to his wife, he intended to be in lieu of a certain debt due him in right of his wife, by virtue of a decree of the Court of Equity. Upon the death of the testator, the wife as survivor became entitled to this decree. The Court of Appeals held that the wife was bound to elect, and that if she accepted the property given to her under the will, she could not retain the decree, giving up the two thousand dollars only.

Chancellor Harper, in delivering his opinion on the first trial of this cause at Edgefield, and which was subsequently concurred in by the whole court, says : " The testator certainly regarded the decree as his own, and that he had power to dispose of it. He speaks of it as *his*, though in right of his wife. It is plain that he did not intend the wife to have it."

With these preliminary remarks and illustrations, we will proceed to examine the several points presented by the transcript of the record and bill of exceptions.

1st. The court below charged the jury, that they should inquire and determine whether from the whole will, the testator intended that the defendant should take $500, or the boy, and not both. How could the testator have intended John McGinnis to take *Booker*, when he wills him expressly to his two other sons, James and Stephen ? It is an inference of equity, that he could not so have intended. The very case before us, is that put by Judge Lomax in *his* treatise on executors and administrators, as an example of a constructive election, as if a testator should devise an estate belonging to his son to a third person, and should in the

same will bequeath to the former a pecuniary legacy; here it is obvious that it was *not intended* that the son should take both, to the exclusion of the other devisee; and he will therefore be put to his election which he will take.—2 *Lomax Ex. and Ad.* 164. It was error therefore to submit that as matter of fact, to be found by the jury, which was an implication of law from the face of the testament.

The truth is, that where a testator gives to a legatee the property of a third person, *believing it to be his own*, as was probably the case in this instance, and at the same time bequeaths a pecuniary benefit to the *owner*, the testator himself can never, in the very nature of things, *intend* to put the party to his election; and the modern doctrine is, that it is sufficient to raise a case of election, that the testator *does* dispose of property which *is not his own;* nor is any inquiry necessary whether he did so, knowing it not to be his own, or whether he did so under the erroneous impression that it was his own; *and the court will not speculate on it.*—1 *Swanst.* 407, *note.* To put the legatee to his election, it is only necessary that the instrument should clearly ascertain the property given; that it was manifestly the intention of the testator to dispose of the property which is not his own; and that the gifts are in such terms as are inconsistent with the notion, that the donee can keep his own estate, and also take under the will, without defeating the intention of the testator. It is, in other words, in the nature of a condition, and that condition is implied from the nature of the several dispositions.—Chief Justice Ruffin, in *Wilson* vs. *Arny*, 1 *Dev. and Bat.* 378. Is not the boy *Booker* clearly designated in the will? Can there be a reasonable doubt, that it was the intention of James McGinnis, senior, to dispose of him? The defendant in error admits it, and insists *only* that he is not *specifically* bequeathed, but *falls into the residuum;* and are not the gifts of *Booker* to James and Stephen McGinnis, and of the legacy of $500 to John McGinnis, in such terms as are utterly inconsistent with the notion, that John McGinnis can, without contravening the purpose of the testator, hold *Booker* by virtue of his independent title, successfully asserted in the action of trover, and also claim the $500, the payment of which is charged upon *Booker*, and the other property embraced in the 5th clause of the will?

The foundation of the doctrine of election is, *the intention of the author of the instrument;* an intention which extending to the whole instrument is frustrated by the failure of any part.—2 *Story's Eq. Jur.* 337. We are of the opinion, then, that the title set up to *Booker* by John McGinnis, and the claim to the pecuniary legacy of $500, are inconsistent with each other; and that he has his choice between them, but that he cannot take both, and so the court below should have instructed the jury.

2d and 3d. The second and third ground of alleged error may be considered together. The judge who tried the cause, charged the jury, that the doctrine of election applied only to *specific* and not to *residuary* legacies; and that they should decide, from a consideration of the whole will, whether the complainants were the one or the other. That if they found them to be *residuary* legatees, then they had no right to call on the defendant to make his election, and that consequently they would in that event find for the defendant.

Now, the general principle is correctly stated, that the doctrine of election cannot be raised in favor of *residuary* legatees, for the simple

reason, that they only take what is left of the estate, after the payment of debts, legacies, and every other demand against the testator. To entitle him to the benefit of this principle, the residuary legatee would have to resort to *parol testimony*, to show that it was the intention of the testator that he should have any particular article which fell under the residuum, and to which an independent title was set up by a third person; and this course is wholly inadmissible, by the rules of evidence. The charge, however, is manifestly wrong, in the unqualified terms in which it was given. James and Stephen McGinnis might be *residuary legatees*, as they were under the will of their father, and yet *specific* legatees as to *Booker;* and so the jury should have been instructed. And the true issue to have submitted, was not whether James and Stephen were *residuary legatees*, but whether it was the intention of the testator—to be gathered from the instrument itself—*to give them Booker*.

If, to constitute a specific legacy, it is only necessary so to describe the chattel as to distinguish it from all others of the same kind, then was Booker specifically bequeathed to the complainants. But it is contended, upon the authority of *Flemming* vs. *Burrows*, 1 *Russell*, 276, and *Stuckey* vs. *Stuckey*, 1 *Hill's Ch. Rep.* 308, that the mention of is *Booker* only by way of *enumeration*, and does not take him out of the *residuum*. Let us examine for a moment these adjudications. In the first it was decided by the Master of the Rolls, that a bequest of the testator's furniture, plate, books, and live stock, or whatever else he might be possessed of at his decease, would pass the general residuary estate, though followed by specific bequests and devises to the same person, and by gifts of pecuniary legacies to various other persons. The doctrine, and its application here, is, that James McGinnis, senior, having, in the beginning of the sixth item in his will, given *all the balance* of his property to his two sons, James and Stephen, after the payment of his debts, legacies and burial expenses; that they would take the whole *residuum*, under these general words, notwithstanding he subsequently, in the same clause, specifically bequeaths to the same sons certain real and personal estate, and the boy, *Booker*, among the rest. It was urged by counsel, in the case of Sir Daniel Flemming's will, that the subsequent bequests in the will were inconsistent with the idea that the testator had made, or supposed himself to have made, a complete disposition of everything belonging to him. But Lord Gifford held, that the enumeration of certain articles in that part of the clause would not be sufficient to restrain the generality of the gift; and that—looking at the whole of the will, *in which it was evident* that the object of the testator's bounty and attention was his natural son—there was nothing which would warrant him in limiting the generality of the testator's expressions, and which were sufficient, taken *per se*, to pass to that natural son the residuary estate. So far as this case, then, applies at all, it is a precedent for the plaintiffs in error; for their father's will shows, conclusively, that *they* were the great objects of his bounty and solicitude; and the decision manifests the strong desire of courts to effectuate the intention of testators.

In the case in Hill, the court ruled, that where the residuary clause in the will contains the following words, " I do hereby leave all the rest of my property, that is not above mentioned, such as horses, cattle, hogs, sheep, geese, beds, crops, and other articles too tedious to mention," &c.,

*that money on hand at the testator's death passed under it;* that this enumeration under a *videlicet* was only a defective enumeration, and not a restriction to the specific articles; that they were rather words of enlargement, the object being to exclude nothing. So, here, in a subsequent part of the same *sixth* clause, the testator bequeaths all the balance of his property, consisting of live stock, working tools, books, notes, accounts, ready-money, and all other property of which he may die possessed. Here it is manifest that the testator intended to include everything which he had to dispose of, and that the specification was intended to enlarge, and not to restrict, the words previously used. We do not perceive, therefore, the advantage to be derived to the defendant in error from this authority. Instead of naming *Booker* and the other slaves, if the testator had included him under words like these : " All the balance of my property, consisting of negroes," &c. But such, unfortunately for the party, is not the fact. *Booker* is bequeathed, *eo nomine,* by that name. And the only inquiry is, Was it the intention of the testator to give him to James and Stephen McGinnis, and would that design be defeated unless John is put to his election ?

But I assume still higher ground, and hold, unhesitatingly, that if the will had been so framed as that *Booker* constituted clearly a portion of the *residuum,* still, if it was apparent from the instrument itself that he was intended to be given to James and Stephen McGinnis, equity would compel John McGinnis to elect between these alternate rights ; for, in such a case, the *reason* of the law ceasing *why* residuary legatees cannot claim the benefit of this doctrine, the law itself would cease to apply. Nay, the courts in South Carolina have gone much further, and the case already referred to, in *Richardson,* says : " If the testator had declared expressly that the decree now claimed by the wife, as survivor, *should form part of his estate, whether to pass under the residuary clause of the will, or to be distributed as property intestate, it is plain that the widow could not have taken her legacy and decree both, without defeating the provisions of the will, and she must have selected.*"

But it is argued, that the testator had a present interest in *Booker,* (*the possession,*) the devising of which to James and Stephen McGinnis was not inconsistent with the paramount title of John McGinnis. It is true that the doctrine of election has been held not applicable to cases where the testator has some present interest in the estate disposed of by him, although it is not entirely his own. In such a case, unless there is an intention clearly manifested in the will to dispose of the whole estate, including the interests of third persons, he will be presumed to intend to dispose of what he might lawfully dispose, and no more.—2 *Story Eq. Jur.* 352. There is an insuperable difficulty, however, in the present case. His *possessory* right, such as it was, terminated at his death; and John McGinnis, in the action of trover, recovered hire from that time. But the *legacy* of *Booker* did not take effect till *after* the death of the testator. No presumption or implication could arise, therefore, under these circumstances, that he intended to dispose of that which could not exist—a *nonentity.* The question, it will be borne in mind, is one of *intention.* Suppose that the testator had a life estate in *Booker. That could not survive him;* and he could not be supposed to be disposing of that by his will. The inference would have been otherwise, had it been

shown that he possessed an estate in this slave, during the life of his wife, or of some other person.    He might then have intended to bequeath only that present interest, without interfering with the remainder in fee in his son, John McGinnis.    There was no such testimony adduced; and such, we imagine, is not true in point of fact.

On the contrary, the presumption is, that the testator supposed that *Booker* was absolutely his property, and that he was willing to make over to his sons, Stephen and James, the entire estate in him.    At the commencement of the sixth clause, he undertakes to dispose of all the residue *of his property*, *Booker* included.    Still further on, he calls him *his slave*, and classes him with the other negroes that are admitted to be his; and charges *the whole* with the payment of his debts, legacies, and funeral expenses.

An argument is invoked from the first clause of the will, to show that the testator did not intend to put John to his election.    The property left to his wife is given expressly *in lieu of her dower*, demonstrating that the testator's mind was called to the contemplation of this subject; and yet he prescribed no such condition in the legacy to John.    The answer is at hand.    He knew that the right to dower vested in his wife; it was an estate vouchsafed to her by law.    He could, therefore, and did, make provision against it, by offering a substitute for it.    Believing, however, that the title to *Booker* was in him, and that he had the same power to will him, that he had the $500 bequeathed to John, it could not have entered his mind to have presented any such alternative.    And in this, and the like case, equity, by a *strong operation*, in the language of the books, interposes, and forces the recusant legatee to a choice between these inconsistent rights.

4th and 5th.    But the court below charged the jury, that if they found for the complainants in the bill, upon the points already discussed, still they come forward too late ; that they had no right to resist the title of the defendant to the utmost to *Booker*, and force him to expend large sums of money in prosecuting his claim, to take the benefit of the chances of litigation in the action of trover, and failing there, to seek now to put the defendant to his election, and that they were not entitled to recover back the money already paid to the defendant towards his legacy, at least so much of it as was advanced before the action of trover was brought.    And in support of this position, counsel have relied with much confidence on the case of *McDowall* vs. *McDowall*, 1 *Bail. Eq. Rep.* 324.

From a review of that authority, I am satisfied that it does not afford any support to the principle contended for.    That was a bill filed by the children of William McDowall, and residuary devisees and legatees, under the will of their grandfather, John McDowall, deceased, against Mary McDowall and Alexander Black, as executrix and executor of the testator, for an account of his estate.    John McDowall, the grandfather, by his will, dated in 1819, had bequeathed to his wife, the defendant, Mrs. Mary McDowall, his household furniture, plate, and carriage and horses, with the privilege of living five years, rent and tax free, in the house behind house No. 194 King-street, and also an annuity of five hundred dollars, payable quarterly, out of his estate, with the use of the fellow, Tom, and washerwoman, Mealy, during her life only, and at her

death the said slaves to be set free by their mistress. And the will adds, " This settlement on my good wife, I hope she will consider a full compensation for any right of dower on my estate, as *I fully do.*" In a codicil, the testator speaks of the surplus of his estate, after paying all gifts and his wife's *dower* of $500 per annum. The testator appointed the defendants, Mrs. McDowall and Alexander Black, executrix and executor of his will. Mrs. McDowall, in her answer, admitted that she had received the annuity of $500 from the estate, and that the furniture and plate were delivered to her, not amounting in value to more than $500 ; that she received but one of the carriage horses, the other having died ; that she received the negro woman, Mealy, the man, Tom, having been sold by the testator in his lifetime ; and that she had the use of the house for the five years directed by the will. Both of the defendants qualified, but Mr. Black acted, principally, in the execution of the will, and delivered the property bequeathed, and made the payment of the annuity to his co-executrix.

In 1824 Mrs. McDowall sued out a summons in dower against the executor, Mr. Black, in the Court of Common Pleas for Charleston district. This was pending until June, 1826, when the following order appears on the Minutes of the court : " Mrs. McDowall's claim of dower— clause in testator's will—after hearing the attorney-general for the motion for a writ of admeasurement of dower, and King *contra,* ordered that the writ do issue." The writ issued accordingly, and the dower was assessed by the commissioners at six thousand five hundred and sixty dollars, for which judgment was entered, and the amount paid by the executor, Mr. Black, out of the funds of the estate.

The present bill was against the executrix, and executor, for an account of the estate ; and the only question submitted, preparatory to taking the account was, whether the widow, Mrs. McDowall, is entitled to retain both the bequests to her contained in her late husband's will, and the amount recovered by her as dower ; whether the bequests to her were not intended in satisfaction of her dower ; and whether she is not bound to elect, and, indeed, whether she has not already elected, by accepting the provision made for her by the will, in the first intance.

The chancellor held, and his opinion was sustained by the Court of Appeals : That if the question was properly before him, whether, on the the face of the will, this bequest was intended as satisfaction of dower, that he would have no hesitation in saying that it does appear to have been so intended—*expressly so.* But he felt himself bound to consider this as a matter already adjudicated by the court of law. And that having been once adjudicated by a court of competent jurisdiction, it should not again be drawn in question. That this defence appearing on the face of the will itself, might have been made in the suit for dower ; yea, it was actually offered, and considered, and the very point now presented decided on ; and that he had no authority to review that decision, however clearly it may have seemed to him to have been erroneous, and notwithstanding it may have been a matter of concurrent jurisdiction in the first instance.

" It is said," continues the chancellor, " that to compel an election appertains exclusively to chancery jurisdiction." There is no doubt of that ; and in order to exercise that jurisdiction, the court determines

the questions which arise on the construction of wills, whether a devise or bequest was intended in satisfaction.  But when the question of construction has been settled by a competent authority, and the provision actually accepted, decided not to be a bar to the demand ; what foundation is there for the exercise of the jurisdiction of this court ?   It would amount to this : A court of law, in the proper exercise of its jurisdiction, determines that a party is entitled both to a legacy and dower ; and that the acceptance of one, on a just construction of the will, is no bar to a demand for the other.  But in a case where the party is entitled to but one of the provisions, it belongs only to this court to compel the party to elect ; and, in order to clear the way to an exercise of this jurisdiction, it may set aside the judgment of a tribunal of equal authority.

Now, the striking difference between this case and the one under consideration is this :  In the case in Carolina, the defence to the suit for dower was apparent on the face of the will, which made provision for Mrs. McDowall, the demandant.  Where that is the case it is a good plea at law.  And if the matter has been once adjudicated, or if the parties had an opportunity of litigation and failed to do so, they will not be heard before another tribunal.  If the testator, James McGinnis, Senior, knowing *Booker* to belong to his son John, had nevertheless willed him to Stephen and James, and bequeathed to John $500 expressly in lieu of *Booker ;* then had John accepted the $500, and afterwards undertaken to recover *Booker*, the acceptance and payment of the pecuniary legacy would be a good plea in bar.  But this is not the case.  Stephen and James allege in their bill, and the fact is not denied, that when they made the first four payments to John, on his legacy, and entered into the agreement, that his sale note should be applied in the same way, they were wholly ignorant of his claim to *Booker.* The gift of the $500 was no defence to the action of trover.  Because it did not purport to be as a substitute for this slave, and the law is, that if a testator gives A a benefit by his will, and by the same will disposes of a piece of property belonging to A, at law he would be entitled to both ; equity only can compel him to elect.

What, then, was the obvious duty of the executors ?

John McGinnis had by his suit set up a title to a negro which they had every reason to believe belonged to their testator, and of almost double the value of the pecuniary legacy left to him.  Were they to stand by and fold their arms in silence and submit to a recovery ?  Fidelity to the estate they represented, to the dying intentions of their testator, forbid it.  Nor are they to be punished now for doing that which they would have been forsworn in not doing.  No *laches* is imputable to them for not pleading the gift of the legacy to the action of trover, for it constituted no legal defence ; and no blame, for resisting the title of the plaintiff—*that obligation* having been imposed by their oath of office.

The plaintiffs in error rightfully insist, therefore, that they were not bound to put the defendant to his election until the title of *Booker* was ascertained.  Nor does the complaint of delay come well from John McGinnis, who conceals from the complainants his intention to claim the negro until they have paid out a good portion of *his own,* and the

other pecuniary legacies ; defrayed the burial expenses of their testator, and satisfied his outstanding debts ; looking to this boy in part for the means of doing so. But this is not all; after he has obtained *Booker*, and two hundred and forty dollars for his hire, he sues for the balance of the $500 legacy, and is proceeding to collect the same of the executors ; and yet thinks it iniquitous that he should be called upon to make his election ; after he has been forced to expend money in litigating the title to *Booker ;* whose recovery too, leaves the disappointed legatee, under the will of his father, *minus* three hundred dollars.

The principle contended for is sound law: that before a legatee can be obliged to make his election, all the necessary accounts should be taken, and the amount that he is entitled to under the will settled and ascertained. And under peculiar circumstances, some of the authorities go so far as to say that *fifty years* is not too long for that purpose.

This will is equally applicable to the other party, seeking to put the legatee to his election, and applies with peculiar force in the present case. Suppose John McGinnis had lain by, just long enough to keep within the statute of limitations, in suing for *Booker ;* and, in the mean time—as he might have done—forced the payment of the pecuniary legacy ; would he not be decreed in equity, under these circumstances, to make his election ? And this is just the case made by the pleadings. The very point decided in *Brown* vs. *Ricketts*, (3 *Johns. Ch. Rep.* 553,) was that, where the plaintiff in his bill sets up a claim, independent of the will, to part of the property devised in trust, to pay the legacies, he must elect to waive his claim, or *wait until it be determined*, before he can call for account or payment of any part of his legacy ; that the question of election does not, and cannot, arise, until the title to the disputed property be settled.

The case of —————— vs. *Giddings*, (3 *Con. Eng. Cas. in Chan.* 383,) is a sufficient reply to the intimation, that John McGinnis had elected to take the $500. It shows that where the legatee, as in this case, takes both estates—possessing himself of that which is his own, and receiving also that given to him by the will—he cannot be said to have relinquished either, but elected rather to take both.

The only remaining point necessary to notice is, the opinion expressed in the conclusion of the charge : that even if the defendant is put to his election, he cannot be compelled to refund the money which has already been paid him on his legacy. The case of *Wake* vs. *Wake* (1 *Ves. Jun.* 335) is directly at war with this idea. The testator bequeathed to his wife £100, to be paid out of his personal estate, within six months after his death, and after some particular dispositions, gave all his estate and effects whatsoever, subject to an annuity of £35, to his wife for life, in trust for his son, by a former wife, whom he made residuary legatee. The widow received her legacy, and also the annuity, *for three years*, and then brought the bill claiming both her interest under the will and her dower, which was about £80 a year. The trustees had let the son into possession at twenty-one, according to the directions of the will. The court being of the opinion that the widow ought to elect ; *the question was, whether, by receipt of the legacy, and of the annuity, for three years, she had not made her election to abide by the will.* But Buller, Judge, for Lord Thurlow, Chancellor, thought

otherwise, observing: "If the argument for the defendant holds, a *single payment* would have bound her; but the point is, whether she had a full knowledge of the circumstances of the testator, and of her own rights. I think there was a case before me about two years ago, at Lincoln's Inn Hall, which went much beyond this. If she had acted with full knowledge, she should not afterwards deny it; but after three years only, I cannot say she is not entitled. The *legacy of* £100, *and what she had received from the annuity, must be accounted for.*"

So in the case of *Wilson* vs. *Arny*, already quoted; it appearing there that the legatee, who was forced to elect, had been in possession of *both* plantation and lot since the death of the testator; he was decreed to account for the rents and profits since that period of the parcel he may surrender; which account the master in chancery was directed to take as soon as the legatee declared his election.

The books abound with similar precedents; but I do not deem it profitable to pursue this investigation further.

Had the estate of James McGinnis, senior, consisted of the boy, *Booker*, and $500 in money *only*, and he had died, making the same bequests, and John had subsequently sued for and recovered *Booker*, and then sought to retain the sums already paid him, and to collect the residue of the $500, the flagrant impropriety of the proceeding would have been manifest to all. And yet in principle there would have been no difference.

The bulk of the estate is given apparently to a few favorite children. But they take it *cum onere*, and, whether, after the payment of debts, legacies, funeral expenses, and the costs of administration, they will be gainers or losers, the record does not disclose.

The learning of the judge who tried the cause, and the verdict of the jury, all bear testimony to the struggles of a strong sense of natural justice, against the supposed wrong inflicted by the will. But with this we have nothing to do. By the laws of the land a man has the right (*I wish it were otherwise*) to dispose of his property by will, even to the entire disherison of his wife and children. And, so long as this power is preserved, the only inquiry with courts must be, not what the testator *ought to have done*, but *what he has done*, with his estate? And courts and juries are just as much bound to execute that will, if it be not against law, as they are the constitution of the United States, or the constitution and statutes of the State of Georgia.

For these reasons the judgment below must be reversed.