STATE BANKING COMPANY *v.* HINTON *et al.*
SANDERS, administrator, *v.* STATE BANKING COMPANY.

Nos. 9656, 9668.   DECEMBER 14, 1933.
REHEARING DENIED DECEMBER 28, 1933.

**72**

*C. N. Davie, J. F. Kemp,* and *J. G. Collins,* for State Banking Company.

*Hammond Johnson,* for Sanders, administrator.

*Marion Smith, Harold Hirsch,* and *Wheeler & Kenyon,* contra.

GILBERT, J. ■ It is insisted that since the children of Mrs. Hinton (defendants in error), under the terms of the will of Mrs. Sanders, were made legatees, in two separate items, of separate legacies, one being real estate and the other bank stock, they are obliged to accept the legacies under both items, or forfeit the legacies under both. Under one item they are devised one half remainder interest in realty. Under the other item they are bequeathed remainder interests in 184 shares of stock in a bank. The bank stock carries the liability to assessment on insolvency of the bank. The bank has become insolvent. The superintendent of banks has issued an execution for the assessment of 100 per cent., as detailed in the statement preceding. Thus it appears that under one of the items of the will the legacy is beneficial; and under the other it is now quite the contrary, because of the burden placed upon it by the law, that is, liability for assessment. The insistence is based upon the provisions of the Civil Code which require, in certain instances, an election, as follows: "A legatee taking under a will must allow, as far as he can, all the provisions of the will to be executed. Hence, if he has an adverse claim to the will, he will be required to elect whether he will claim under the will, or against it. The mere fact of being a creditor does not constitute a case of election." § 3910. "A case of election arises whenever a person

is entitled to one of two benefits, to each of which he has legal title, but to enforce both would be unconscientious and inequitable to others having claims upon the same property or fund. In such cases equity has jurisdiction to compel an election." § 4609. "When a testator has affected to give property not his own, and has given a benefit to a person to whom that property belongs, the devisee or legatee must elect either to take under or against the instrument. The rule does not apply if the will itself, from other causes, is not efficient in passing the title to the property of the devisee or legatee; nor if the testator has an interest in such property upon which the will may operate; nor if the bequest shows that the testator intended to bequeath only in the event that his own title was good; nor if the benefit given to the party called upon to elect is not from testator's own property, but by virtue of a power of appointment in him." § 4610. Counsel for defendants in error deny the applicability of any of those sections to the case based upon the present facts. To determine that question, the court must inquire into the source from which the codifiers derived the sections cited, in order to ascertain what those sections mean.

It is of course well established that, by reason of the adoption of the Code of 1910 as a whole by the General Assembly, every section now has the force and effect of a statute. These sections were not originally founded upon statutory authority in this State. In *McGinnis* v. *McGinnis*, 1 *Ga.* 496, 503, this court discussed the doctrine of election, as follows: "To put the legatee to his election, it is only necessary that the instrument should clearly ascertain the property given; that it was manifestly the intention of the testator to dispose of the property which is not his own; and that the gifts are in such terms as are inconsistent with the notion that the donee can keep his own estate, and also take under the will, without defeating the intention of the testator. It is, in other words, in the nature of a condition, and that condition is implied from the nature of the several dispositions. Chief Justice Ruffin, in Wilson *v.* Arny, 1 Dev. and Bat. 378." See the full discussion in that case. *Lamar* v. *McLaren,* 107 *Ga.* 591, 602 (34 S. E. 116), follows the *McGinnis* case, and contains the following: "It was recognized in this State prior to the Code, as we have seen, in *McGinnis* v. *McGinnis,* supra, and is entirely consistent with the declaration of the Code upon this subject." "The rule is, that, unless the contrary

manifestly appears from the words employed, the language of a code section should be understood as intending to state the existing law, and not to change it." See p. 599, and cit. Especially is this true where a broad and well-established principle of equity had been established before the approval of the act of this State adopting the English law as far as applicable. The *McGinnis* case was decided by this court at the September term, 1846, about one year after the establishment of the court, and before the adoption of any code. The doctrine of election was derived from the Roman or Civil law. 3 Story's Eq. Jur. 115, § 1454; 1 Pom. Eq. Jur. (4th ed.) 880, § 463.

We look, then, to the earliest authorities accessible, to see how and under what circumstances the doctrine of election was applied: "The earliest cases in which the doctrine of election was applied in English jurisprudence seem to have been those arising out of wills; although it has since been extended to cases arising under other instruments." 3 Story's Eq. Jur. (14th ed.) 116, § 1456. Mr. Story, in the same work, describes the doctrine of election as follows: "Election in the sense here used is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is clear intention of the person from whom he derives one that he should not enjoy both. Every case of election therefore presupposes a plurality of gifts or rights with an intention, express or implied, of the party who has a right to control one or both, that one should be a substitute for the other. The party who is to take has a choice; but he can not enjoy the benefits of both." The same doctrine of election is stated in 1 Pom. Eq. Jur. (4th ed.) § 461; Bispham's Eq. (9th ed.) § 295; Beach on Wills, § 154; Redfearn on Wills & Administration, 288, § 148. For an elaborately annotated case reference is made to McDermid *v.* Bourhill, 101 Oregon, 305 (199 Pac. 610, 22 A. L. R. 428). Reference is especially made to "A Treatise on Wills" by Jarman, an English work first published more than one hundred years ago, which has gone through a number of editions. The sixth edition of the work of Mr. Jarman, by Charles Sweet of Lincoln's Inn, devotes some 27 pages, including elaborate annotations of English cases, to the subject of election. This edition states that the general doctrine as applied by Mr. Jarman is "where a testator disposes of his own property, and also professes to dispose of prop-

erty which does not belong to him." 1 Jarman on Wills, 531. It is stated in connection therewith that there are other classes of cases to which the doctrine is applicable; and such classes are mentioned. "Questions with regard to election also arise where persons to whom benefits are given by will have claims on the testator arising out of a transaction entered into by him during his lifetime; as in the case where a father, on the marriage of one of his children, covenants to settle property on the child, and afterwards gives benefits to that child by his will." Id. 531; See 2 Jarman on Wills, 1158. Again, where a testator makes a bequest or devise to A on condition that A release some right or transfers some property of his to B, here A must elect whether he will comply with the condition or forfeit the gift under the will. Again, "where one of several houses, pieces of land, chattels, or other kinds of property, is devised or bequeathed in such a way that the devisee or legatee has a right to elect which he will take."

Mr. Jarman sums up (vol. 1, p. 532) : "The doctrine of election . . may be thus stated," that "he who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions, and renouncing every right inconsistent with it. If, therefore, a testator has affected to dispose of property which is not his own, and has given a benefit to the person to whom that property belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition; but if, on the contrary, he choose to enforce his proprietary rights against the testator's disposition, equity will sequester the property given to him, for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of those rights. . . If the property which the testator affects to dispose of belongs to several, as tenant for life and remainderman, each has a separate right of election." The decisions of this court have been in harmony with the general rule stated in "Jarman on Wills." *Miller* v. *Cotten,* 5 *Ga.* 341 (5), *McFadden* v. *Dale,* 155 *Ga.* 256 (116 S. E. 596) ; *Harber* v. *Harber,* 158 *Ga.* 274, 276 (123 S. E. 114). It is impracticable to quote here all that is said in that splendid work. Sufficient has been quoted to show how the doctrine was applied in the early English decisions. From a careful consideration of the entire subject it is obvious that the sections of the Georgia Code quoted above originated in the

English law as laid down by Jarman on Wills. Indeed, the language of the code sections is strikingly in conformity to that used by Mr. Jarman. General statements are made and applications follow, and in each instance the application shows clearly that the doctrine of election applies where a testator disposes of property which does not belong to him as well as property which does belong to him, or where the interest of some legatee will be affected. Thus construed, the code sections, applied to the facts of this case, do not require the children of Mrs. Hinton to elect between accepting the bequests in both the third and the eighth items of the will of Mrs. Sanders. Mrs. Sanders, in her will, does not undertake to dispose of property not her own. The Hinton children, so far as the record discloses, have no interest antagonistic to the will of Mrs. Sanders. Their rejection of the bequest in the one item does not result in loss or hardship to any other legatee which, under equitable doctrines, would require compensation.

Mr. Jarman, near the close of the discussion of the doctrine (vol. 1, p. 556), states: "Where by the same will two properties are given to the same person, one beneficial and the other burdensome, he is generally at liberty to accept the former and reject the latter, although by so doing he throws a burden on the testator's general estate, which, if he accepted both, must be borne by himself; as where the repudiated gift comprises shares in a company which, after the testator's death, fails and is wound up, the shareholders being called on to contribute, or where the subject is leasehold property, in respect of which the testator was liable at his death under his covenant to repair. So where a testator devised a house, which was mortgaged beyond its value, upon trust to permit his two sisters to have the use and occupation of it and the furniture in it; the furniture was sold and the proceeds invested; and it was held that the sisters were entitled to receive the income of the investments without keeping down the interest on the mortgage debt. . . The cases are not easy to reconcile, but the test seems to be whether or not the gifts are separate and distinct. If onerous property and beneficial property are included in the same gift, as an aggregate, then, unless a contrary intention appears by the will, the donee can not disclaim the onerous property and accept that which is beneficial; he must take the whole gift or nothing. But if two distinct gifts are made by the same will, one of them being onerous

and the other beneficial, the donee may reject the former and take the latter." The two bequests, the real estate and the bank stock, are separate and distinct, and were not gifts as an aggregate; therefore the donees may reject the one and accept the other. Therefore we hold that the children of Mrs. Hinton have the legal right to accept the legacy as to the real estate as devised in the eighth item of the will, and to decline to accept the legacy provided for in the third item of the will. It follows that the superintendent of banks can not legally subject the real estate mentioned in the eighth item of the will, under an assessment against the bank stock on the theory that it is owned by those defendants.

It is argued that the previous decision rendered by this court (174 *Ga.* 824, supra) requires a different ruling. The following is quoted from the opinion in that case: "When Mrs. Hinton died that trust became executed and the stock automatically became the property of the children of Mrs. Hinton. This is true, notwithstanding the fact that no transfer of the shares to them on the books of the bank had ever been made." Under the record as it then stood, that statement was correct. The writer of this opinion was also the writer of the opinion in the case at that time, and readily admits that the sentence is subject to criticism. It would have been more accurate to have stated that "the stock automatically became the property of the children of Mrs. Hinton, *subject to their acceptance or rejection.*" However, it was stated elsewhere in the opinion: "We find nothing in the record to show either acceptance or refusal to accept the bank stock by the children of Mrs. Hinton. Hence we omit any observations on that question." The two extracts, construed together, are sufficient to warrant the same construction as if they had been stated in immediate connection. It is also true that where land is devised to one for life, with remainder over to another, the executor's assent to the devise for life inures to the benefit of the remainderman, and at the termination of the life-estate the remainderman may take possession of the property, unless the will shows a different intention. *Watkins* v. *Gilmore,* 121 *Ga.* 488 (2) (49 S. E. 598) ; *Citizens Bank* v. *Citizens & Southern Bank,* 160 *Ga.* 109, 116 (127 S. E. 219). Until the remaindermen accepted, their title was inchoate. The remaindermen, however, have the legal right to reject the devise. When the case was here before, the Hinton children were not parties. Carter,

78

trustee of the real estate, was a party; and this court held that Carter was not trustee of the bank stock.

The superintendent of banks does not seek to recover any funds now in the hands of the administrator of the Sanders estate. He does seek to subject the half interest in the real estate belonging to the children of Mrs. Hinton. The administrator seeks to subject that real estate if he is held liable for the assessment. When the case was previously before this court it was decided that the assessment on the bank stock could not be recovered from the administrator as a debt of the estate of Mrs. Sanders, as the case was then made. It would be useless to repeat here what was there said. The superintendent of banks is not a creditor. The estate of Mrs. Sanders does not owe any "debt" to the superintendent of banks. The demand sought to be enforced is not a "debt" in the sense in which it is used in the Civil Code, § 3997, et seq. It is accepted by courts generally that there is a distinction between a "claim" or a "demand" and a "debt." Not all valid "claims" are "debts," nor are all valid "demands" debts. "The assets of such estate" of a deceased person "are only bound for the debts contracted by the testator during life. *McFarlin* v. *Stinson,* 56 *Ga.* 396; *Lynch* v. *Kirby,* 65 *Ga.* 279." *Carter* v. *Davis,* 174 *Ga.* 824, 835; Old Colony &c. Co. *v.* Parker-Sampson-Adams Co., 183 Mass. 557 (67 N. E. 870, 871) ; Bailies *v.* DeMoines, 127 Iowa, 124 (102 N. W. 813). It was held by the Supreme Court of New Jersey that the words "debt" or "debts" of an estate, used in a refunding bond given to an executor "are obviously the debts of the decedent, due by him in his lifetime, and not the claims of the executor for remuneration and expenses . . of the estate." Lloyd *v.* Rowe, 20 N. J. L. 680. That principle is applicable here. Section 3912 of the Code refers to "debts" owing by the deceased in his or her lifetime. It does not apply to such a demand as is made in this case, where, long after the death of the testatrix, a bank fails and by operation of law there is a liability against the stock formerly owned by such testatrix. Except as provided by law, there is no person authorized to contract a debt against an estate of a deceased person. We held, in 174 *Ga.* 824, supra, that the executor could not create a binding debt against the estate even to be used for the benefit of the estate, not even when the money was for the payment of taxes due on property held by him as executor of the estate. The

Civil Code (1910), § 4000, provides the order in which claims against the estate of a decedent shall be paid. While these items are referred to as "payment of debts," some of them are not, accurately speaking, debts. For instance, a year's support is "among the necessary expenses of administration, and to be preferred before all other debts" of the estate. § 4041. Funeral expenses, in their nature, can not be debts of the estate, but are statutory liabilities. The Code, § 4012, makes provision under which an administrator may exercise his discretion in continuing the business of his intestate until the expiration of the current year. An assessment on bank stock is a "statutory liability." *Lane* v. *Morris,* 10 *Ga.* 162, 165. It is apparent that the statutory liability on bank stock can not fall under either section 4000 or 4012. The "personal-liability clause is of modern date in bank charters." *Thornton* v. *Lane,* 11 *Ga.* 459, 513 (decided in 1852).

At common law the debts of a corporation died with its dissolution. *Hightower* v. *Thornton,* 8 *Ga.* 486 (52 Am. D. 412); *Lane* v. *Morris,* supra; *Thornton* v. *Lane,* supra; *Robison* v. *Beall,* 26 *Ga.* 1, 33, 73; *Georgia Masonic Insurance Co.* v. *Davis,* 63 *Ga.* 471. "At common law the stockholders in a corporation are not liable individually for the corporate debts." *Tichenor* v. *Williams Pavement Co.,* 116 *Ga.* 303, 306 (42 S. E. 505). "The legislature, in enacting this law, in which an ultimate liability is imposed, upon the exhaustion of a prior liability, are to be understood as meaning legal liability." *Thornton* v. *Lane,* supra. It is a fundamental proposition that stockholders of a corporation are not legally liable for its debts, unless expressly made so by law. That fact is one of the chief reasons why numbers of people combine their assets into a corporation in order to capitalize a business larger than the individual is ordinarily able to do. It therefore required statutory enactment to change the common law. A statute of that kind, being contrary to the common law, must be construed strictly. Liability of the shareholder is contingent on the insolvency of the bank, and does not attach until the primary liability is insufficient; that is, that the bank is insolvent. *Tichenor* v. *Williams Co.,* supra. Such secondary liability does not accrue until the execution has been issued. Since the demand of the superintendent of banks for the payment of the assessments made on the stock held by the testator in his lifetime was not a debt created by the testator, and

since it does not come within the provisions of § 4000 or § 4012, it remains to be seen whether or not the provisions of the banking act (Ga. Laws 1919, pp. 135-189, 8 Park's Code Supp. 1922, § 2279(b), Michie's Code, § 2366(140)) created a statutory liability against the estate, which must be paid by the executor or administrator. Compare *Clay* v. *Mobley*, 171 *Ga.* 548, 551 (156 S. E. 194). In so far as applicable, that statute is as follows: "Persons holding stock as executors, administrators, guardians, or trustees shall not be personally subject to any liabilities as stockholders; but the estates and *funds in their hands* [italics ours] shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust fund would be, if living and competent to act and hold the stock in his own name." In *Clay* v. *Mobley*, supra, it was said: "By express provision of this statute, trustees are exempt personally from liabilities as stockholders; but the estates and funds *in their hands* [our emphasis] are made liable in like manner and to the same extent as persons interested in such trust funds would be if the stock stood in their own name."

The provisions of the banking act quoted above could not and did not have the effect of nullifying the assent of the executor to the devise of the real estate which had already passed into the remaindermen because of the assent of the executor and the acceptance by the legatees. The Civil Code (1910), § 3912, provides: "If the executor has assented to the legacies, and the legatees are in possession, after exhausting the assets in the hands of the executor the creditor may proceed against each legatee for his pro rata share." But, in order to make that section applicable, there must be "debts" of the estate, and there must be a "creditor." The banking act can not be construed as authority for the superintendent to collect his assessments against the estate under § 3912, because it is not a debt, nor is the banking superintendent acting for the creditors of the bank a creditor of the estate, and the banking act affords no statutory authority for such a proceeding. If any funds of the estate could be subjected to the payment of the stock assessment under the express terms of the statute last quoted, they would be only that part of the estate and funds which were *in the hands of the executor, administrator,* etc., at the time the assessment was made. In the present case the real estate which the su-

perintendent seeks to subject had passed out of the estate. "This assent 'when once given is in general irrevocable, although the assets may prove insufficient to pay the debts.' 2 Woerner's Am. Law of Adm. *993. By assenting to the devises the executors lost all control and interest in the land." *Watkins* v. *Gilmore,* supra. To hold otherwise would tend to unsettle titles in some instances; for if in the present case it were held that legacies of real estate can be subjected five or six years after they have passed out of the estate and into the hands of legatees, the same thing might be done if the life-tenant lived for twenty or more years. During all that time it would be a matter of doubt whether or not the contingency would arise rendering the real estate subject to the assessment. This could not have been the intention of the General Assembly in enacting the banking law.

Atkins, the trustee named in the will, died on May 1, 1930, and the bank was closed on May 5, 1930. There was no successor appointed for Atkins (who was originally named) as "trustee" for the stock. The remaindermen, now defendants in error, on the death of Atkins, applied to the superior court and caused a successor to be appointed to Atkins, who was trustee, to hold the real estate. It is significant that they did not apply for the appointment of a new trustee of the bank stock. The reason is obvious. The bank had already failed. They knew that it was insolvent, and avoided any action which might result in liability on their part for the assessment on the stock. Atkins held the bank stock as "trustee" for more than five years, had it transferred to him on the books of the bank as such holder, and it so stood until his death four days before the bank failed. He was also executor and had assented to the bequest. He was never trustee of the children of Mrs. Hinton as to the bank stock. His only duty under the will, at the death of Mrs. Hinton, was to divide the stock among her children. Five years after the assent and acceptance by the life-tenant, the estate can not be held to be the owner of the stock. Whether, in such circumstances, there is any provision in the will under which any other person would take the stock is not for decision. When the executor died and the bank closed, the stock was worthless and no one could be compelled to accept it as a gift. A liability can not be placed upon the estate or upon the legatees because of the inaction or improper action of the executor. The present adminis-

trator can not recover the real estate devised, his predecessor having already assented to the devise, and the legatees having signified acceptance. The superintendent can not recover the real estate from legatees or from the administrator, since it is not "in his hands." The demand was made five years or more after the assent; and therefore a recovery can not be based on notice within twelve months, as provided in the Civil Code (1910), § 3997; the insolvency occurred and the liability accrued long after the twelve months expired. The execution issued under the statute is "a lien on all property of the defendant subject to levy and sale for the amount which shall be adjudged to be due thereon from the date of the issuance thereof by the superintendent." Code, Park's Supp. 1926, § 2268(t), Michie, § 2366(71). Under the banking law quoted above, the superintendent of banks could have recovered as payment on the assessment funds *in the hands* of the administrator, if any. The situation is similar to the provision in the Civil Code (1910), § 3997: "Creditors failing to give notice within that time lose all rights to an equal participation with creditors of equal dignity, to whom distribution is made before notice of such claims is brought to the administrator; nor can they hold the administrator liable for a misappropriation of the fund; if, however, there are assets in the hands of the administrator sufficient to pay such debts, and no claims of higher dignity are unpaid, the assets shall be thus appropriated, notwithstanding the failure to give notice."

The lawmakers very wisely have not seen fit to declare a liability against any one except the owner, or where the assessment is made and execution issued while the stock is held by an executor, administrator, guardian, or trustee, and then only as against property in the hands of such representative. There are other sound reasons why the legislature went no further. Suppose an estate was not fully administered for thirty or forty years. Such was the case in *Cozart* v. *Mobley*, 43 *Ga. App.* 630 (159 S. E. 749). In such circumstances, suppose parts of the estate have been assented to for approximately that length of time and there was Georgia bank stock held by the executor or administrator, and before full administration of the estate the bank becomes insolvent. *If* against property of the estate, after bequests have been assented to and accepted, a recovery could be had on a bank assessment, this

bequest could be subjected to the payment thereof. If that were the law, the executor could not afford to assent, nor could the legatee afford to accept the real property devised under the will. To do so in such a case, the estate would be liable to the extent of the value of the property thus distributed, and the distributee would hold subject to such liability, and could neither improve nor sell the property, nor could any one safely buy or accept such property as security. The plaintiff in the present case seems to proceed upon the erroneous theory that in any and all events, when a Georgia State bank becomes insolvent, the State superintendent for the benefit of creditors must of necessity recover on the statutory liability from some one. Such a law would lead to manifold injustice. Few if any persons in such a case would have the temerity to own stock in any bank chartered under such a statute. Few would deem it beneficial to accept real estate devised by a testator who owned Georgia State bank stock. The plaintiff also seems to entertain the idea that some one must of necessity own the stock. That theory is not sound. Property of any kind, valuable or otherwise, may be disowned. 1 C. J. 12, § 20. More especially may one disown or refuse to accept things once of value but now worthless. A worthless check, a promissory note, can be cast away or destroyed by its owner. It is not property, because it is worthless, and no one is required to own it.

It is argued that if it is decided that the assessment can not be collected from the children of Mrs. Hinton, or from the estate of Mrs. Sanders, then there is no person or persons from whom the assessment can be collected. That difficulty can not affect the issues as to the liability of the parties to this suit. It may and doubtless does happen in numerous instances, that, for one reason or another, the superintendent of banks is unable to collect assessments made against shareholders in insolvent banks.

The judgment of which complaint is made is

*Affirmed. All the Justices concur.*