WILLIAM T. S. ADAMS, plaintiff in error, vs. JOHN DICKSON, administrator, defendant in error.

[1.] In an action of trover by the administrator of the wife, against one claiming under the husband who was dead, the plaintiff offered in evidence, as an ancient document, a writing having subscribed to it, the names of the husband and the wife; the writing related to her negroes, and was more than thirty years old; it was found among the papers of the husband after his death; it had been delivered to him, by a person to whom it had been committed by the wife, that that person might get it recorded; the wife at a time when the husband was about selling some of the negroes, asserted in his

Adams vs. Dickson adm'r.

presence, the existence of a marriage contract, and he did not deny the assertion.

*Held*, That the writing was admissible in evidence, as an ancient document.

2.] A statute ought, if possible, to be so construed, that it shall not divest a vested right without compensation.

[3.] In an anti-nuptial contract between husband and wife, he agreed that he would " never, after marriage, either in the life, or after the death," of the wife, either directly or indirectly, for himself, or for any of his heirs, lay any claim" to any of the property referred to, in the contract: he further agreed, that the contract should be " taken and construed most liberally" for the wife.

*Held*, That what the husband thus agreed to, prevented his marital rights from attaching on the property; that the property, on her death, went to her next of kin, and not to him, or to his heirs.

Trover, in Catoosa Superior Court. Tried before Judge TRIPPE, at April Term, 1857.

This was an action of trover, brought by John Dickson, administrator of Elizabeth Fielding, deceased, against William T. S. Adams, for the recovery of the value of fourteen negroes, alleged to be in defendant's possession, and converted by him to his use, &c.

The defendant pleaded the general issue; and further, that said negroes were the property of Jonathan Fielding, deceased, at the time of his death, and who left a will disposing of said slaves, and appointed defendant his executor, and that defendant took possession of the negroes sued for, and now holds them as the executor of said Jonathan Fielding, deceased. There was a further plea that since the commencement of said suit one of the negroes has died.

Upon the trial counsel for plaintiff offered in evidence and proposed to read, without proof, as an ancient deed, the following paper, to-wit:

STATE OF SOUTH-CAROLINA, }   Know all men by these pre-
    Pendleton District.    }  sents, That we, the underwritten, Jonathan Fielding and Elizabeth Dickson, having agreed to intermarry, and whereas said Elizabeth Dickson be-

ing desirous to retain and keep some of her property which she now owns, to be and remain at her own disposal during her life, and at her death, have agreed as follows : That the said Jonathan Fielding will never, after marriage, either in the life or after the death of her the said Elizabeth Dickson, either directly or indirectly, for himself or for any of his kin, lay claim to any of the after named negroes or increase, but gives them up to be at the whole disposal of her the said Elizabeth, as absolutely, and as fully as if no marriage had ever taken place, and that he the said Jonathan, doth by these presents, bind himself, his heirs, executors and administrators, firmly in the full sum of two thousand dollars, that neither of them or any other person for them, shall lay any claim to her negroes, Dick, Jack, Clara, and Dianna, or either of them, but that the said negroes Dick, Jack, Clary and Dianna, shall ever hereafter remain as fully and absolutely the said Elizabeth's property, and be as fully at her disposal as if no marriage had ever taken place, but that she had lived and died in a single state.    And it is further agreed between the contracting parties, that said contract shall ever hereafter be taken and construed most liberally in favor of said Elizabeth, according to the true intent and meaning of these presents.

In testimony whereof, we have hereunto set our hands and affixed our seals the eighth day of December, in the year of our Lord, one thousand eight hundred and seventeen.

JONATHAN FIELDING, [SEAL.]
ELIZABETH FIELDING, [SEAL.]

In presence of us.

JOHN WILLSON,
PETER McMAHEN.

To the introduction of this paper without proof, counsel for defendant objected.    It was admitted that it was produced by defendant, and was found among the papers of his testator, Jonathan Fielding, after his death.

The Court overruled the objection and let in the paper, and counsel excepted.

Counsel for defendant then objected to the introduction and reading of the instrument in evidence, on the ground, that, by the laws of South Carolina, and Georgia, it was void. The Court overruled the objection, and counsel for defendant excepted.

Plaintiff then read the paper to the jury, and proved the identity of the negroes, sued for, with those mentioned in the deed, and their increase; proved their value and the value of their hire, and demand and refusal to deliver them.

Plaintiff also proved, that after the marriage, Mrs. Fielding spoke of a marriage contract, and said she had given it to one Robertson to have it recorded, with the money to pay for recording it. That Robertson did not have it recorded, and she was much dissatisfied about it. Robertson kept it about two years and handed it to Fielding; it was found in Fielding's possession among his papers at his death, and was produced by the executor of Fielding, under a notice.

Plaintiff further proved, that Mrs. Fielding said in 1842, in the presence of Jonathan Fielding, that there was a marriage contract, at the time when he was about selling some of the negroes, and Fielding made no denial. It was also proven that Elizabeth Fielding died 5th January, 1848, and left the negroes in possession of her husband, Jonathan Fielding. That Jonathan Fielding died 27th April, 1852. Letters of administration on Mrs. Fielding's estate, was granted to plaintiff on the 2d August, 1852.

Here plaintiff closed.

Defendant offered no testimony. The acts of South Carolina in relation to marriage contracts, &c., being considered in evidence.

The Court charged that the marriage contract was properly in evidence. That by the laws of South Carolina and

Georgia, said instrument was valid between the parties, and that the true intent and meaning thereof, was that Elizabeth Fielding retained her title to the property therein mentioned, in fee, and that the marital rights of her husband never attached either during or after the coverture.

. To which charge and ruling counsel for defendant excepted.

The following verdict was taken in accordance with the views and charge of the Court. We the jury find for the plaintiff the sum of ten thousand two hundred and fifty dollars damages, for the value of said negroes sued for: And the sum of three thousand and eighteen dollars and twenty-five cents, for hire up to this day, with cost of suit: which may be discharged by delivering up the negroes within thirty days from this day, and the payment of the amount found for hire and cost."

And defendant tenders his bill of exceptions, assigning as error the rulings and charges aforesaid.

WRIGHT, W. Y. & A. J. HANSELL; and McCUTCHINS, for plaintiff in error.

UNDERWOOD, AKIN, and CULBERSON, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

First: Was the instrument admissible as an "ancient document?"

The instrument was more than thirty years old. It was one found among the papers of the husband of her under whom, the plaintiff in the action, claimed. It was proved, that he received it from a person to whom she had entrusted it, to get it recorded. He therefore, it is to be presumed, received it as her agent. And it is further to be presumed, that after receiving it, he held it in the same character in which he had received it.

Besides, when there is no trustee, the husband of necessity, may hold the possession what belongs to the wife. In such case, his being in possession of it, does not prove it his and not hers.

Moreover, in this case, the wife, in the presence of the husband, asserted the existence of a marriage contract, and he did not deny the assertion, although the assertion was made at a time when he was about selling some of the negroes included in this contract.

[1.] These being the facts and circumstances, we think that the document *was* admissible as an " ancient document."

It is laid down, (correctly, as we think,) by Greenleaf, that if such documents are free from just grounds of suspicion, and come from the proper custody, or have been acted on, they are admissible as evidence without other proof of their execution. 1. *Green. Ev. Sec.* 570. These conditions we think are satisfied in this case.

Secondly: Was this writing rendered void by the statute of 1823, of South Carolina?

The second section of that act declares, that—" no marriage settlement shall be valid until recorded," "provided, that the parties shall have three months to record the same, and if not recorded within three months, the same shall be null and void."

From what point is this three months period to start? from the date of the statute or from the date of the particular marriage settlement that may happen to be the one in question?

If we answer, the date of the statute, then we say, that the statute meant to annul every marriage settlement made after the expiration of three months from the date of the statute, because it must be true of every such marriage settlement, that it *could not* be recorded within three months from the date of the statute.

No such absurdity follows, if we answer—the date of the particular marriage settlement that may be in question; unless, making the act operate retrospectively, we extend the

operation to settlements executed more than three months before the date of the statute.

In 1832, the Legislature of South Carolina, passed another statute on the same subject. This statute carries within it, clear evidence, that, in the opinion of the Legislature, the date of the marriage settlement, and not the date of the statute of 1823, was the starting point, intended by the statute of 1823, for the three months period.

The Act of 1832, contains what follows: "Whereas the act of the Legislature, passed on the 20th of December, 1823, requiring marriage settlements to be recorded in the office of the register of mesne conveyances of the district where the parties resided, within three months, has not been generally known, and many fair settlements have not been so recorded, and are therefore liable to be avoided, to the great injury of the wife and parties interested therein, to remedy which evil:

*Be it enacted,* That marriage settlements of the wife's property, executed since the said 20th day of December, 1823, and not recorded, shall be regarded as valid between the parties themselves ; and when any such settlement has already been recorded, or within six months from the passing of this act, shall be recorded, in the office of the Secretary of State, and of the register of mesne conveyances of the district where the party whose property is settled, resided at the time of executing such settlement, the same shall be valid against the debts, sales, and mortgages, of the husband, which shall be contracted, made or executed, after the ratification of this act, any thing in the Act of 1823, notwithstanding."

We think, then, that the time from which the period of three months, begins to run in any case, is, the date of the marriage settlement in that case, and is not the date of the Act of 1823.

Is that act, then, to be construed so, as to make it operate on marriage settlements bearing date more than three months before the passage of the act? If it is, then we must say,

that it was the intention of the Legislature, to destroy all of those marriage settlements, without giving them a chance for their lives; for it is impossible, that an unrecorded instrument more than three months old, can be recorded within three months from its birth.

It seems, that the Legislature of 1832, did not consider the act susceptible of this construction—for they gave relief to marriage settlements made after the act, and said nothing about those made before the act, and if both kinds of settlements, were needing relief, the latter were best entitled to it, as they were made at a time when there was no law in existence, requiring them to be recorded; and they being best entitled to relief if they needed relief, it is to be presumed, that the Legislature, if it had considered them as needing relief equally with the former, would not have passed them over without relief, while relieving the former, who were less entitled to relief. Hence we may conclude, that, in the opinion of the Legislature, they were not needing relief; and, consequently, we may conclude, that, in the opinion of the Legislature, the Act of 1823, did not apply to them.

We think it safe, to follow the legislative interpretation. Any other would be fraught with much evil.

[2.] Besides, it is a general principle, that statutes shall not be so construed, as to make them destroy vested rights without compensation, if there is any way to escape from such a construction.

Thirdly: Was it the effect of this marriage contract to prevent the marital rights of the husband from attaching to the negroes, both during the life of the wife, and after her death?

[3.] We think so.

This contract is much stronger against the husband, than was the contract in *Holmes vs. Liptrot*, 8. *Ga.* 279. In this contract, the husband agrees, that he " will never, after marriage, either in the life, or after the death, of" the wife, " either directly, or indirectly, for himself, or for any of his

heirs, lay any claim" to any of the negroes. He further agrees, that the contract is to be " taken and construed most liberally in favor" of the wife.

There is nothing so strong as this, in *Holmes vs. Liptrot*. Indeed, I may say, that I, myself, doubt *Holmes vs. Liptrot*. But I cannot doubt, that it was the purpose of the husband in this case, to agree that he would *never*, by virtue of his marriage, claim *any right whatever*, in the negroes to which the contract related.

The case is stronger against the husband, than was that of *Sheppard vs. Sheppard et al.*, decided at Savannah, June, 1857, and yet, in that case, we held the husband barred. See too, *McCurd vs. McCurd*, 19. *Ga. Rep.* 609.

There is nothing in the preamble of this contract, that can prevail over the strong words of the body of it, especially when it is part of the latter words, that the contract is to be construed " most liberally" for the wife.

No question was made in this case, whether the rights of the wife under the instrument, were not such, that they ought to be asserted, rather, in equity, than, at law; and nothing on that question is decided.

We think that there ought to be an affirmance of the decision of the Court below.

Judgment affirmed.