## HORTON *et al vs.* MERCIER *et al.*

A testator, by his will, left, amongst other things, certain property in the possession of his son-in-law to his daughter and her children. One share of the residue of his estate, not disposed of by his will, he directed to be settled in trust upon his daughter and her children. The son-in-law was appointed trustee, and filed his bill to recover his wife and children's share of the residue. The executors resisted a recovery, unless he would declare, in writing, that he held the property, mentioned in the fifth item, and in his possession at the death of the testator, as a part of the trust estate of his wife and children. *Held*, that the will did not make a case for election. Stubb's Act of 1857, to simplify Equity Pleadings, construed.

In Equity, in Troup Superior Court. Tried before Judge BULL, at the May Term, 1860.

This case came up for a hearing upon the following state of facts, to wit:

On the 26th of October, 1850, Jeremiah Horton made and published his will in due form of law.

The first item of the will contains a bequest of certain lands to Frances Horton, the testator's wife, for her own

use and benefit during her natural life or widowhood, and at her death, to his son, John H. Horton; also, certain slaves, named, and all other slave property, of which the testator might die possessed, not otherwise disposed of in said will; also, all the stock of every description, not otherwise disposed of in the will, together with a wagon and gear, ox-cart, pleasure carriage, cotton gin, and all other undisposed of items of property, of which the testator might die seized and possessed, to be held and enjoyed by his said wife during her natural life or widowhood, with power to sell any of said property, and invest the proceeds as she might think best for the interest of her and her children.

The second item contains a bequest of certain lands to the testator's sons, Thomas R. Horton and Jeremiah S. Horton, to be equally divided between them, by sale or partition, as they may think fit.

The third item contains a bequest of certain slaves and money to the testator's daughter, Mrs. Eliza A. Duncan, to be secured to her and her children.

The fourth item contains a bequest to the testator's son, Thomas R. Horton, of certain slaves and other property.

The fifth item contains a bequest to the testator's daughter, "Mrs. Rebecca M. Mercier, the following negroes: Hannah, a woman, and her increase; George, a boy; Bill, a boy; and Jim, a boy—to her and her children, forever, which said negroes have heretofore been delivered to her."

The sixth item contains a bequest of certain negroes and other property to the testator's son, Jeremiah S. Horton.

The seventh item contains a bequest of certain negroes and other property to John H. Horton, a son of the testator.

The eighth item provides, that the property bequeathed to Jeremiah S. Horton and John H. Horton should be retained and managed by the wife of the testator until they arrived at full age, and that, if any of the negroes bequeathed to said sons should die or become disabled before the majority of said sons, it should be made up to them at the death or marriage of their mother, or sooner, if she could spare it.

The ninth item directs: "That, if either of the testator's sons should die during their minority, and without marriage or issue, then their distributive share, or shares, should revert back to his estate, to be held by his wife during her life or widowhood, and at her death to be distributed as directed in the next item."

The tenth item provides, that, should the testator's wife see proper to marry again, she shall, first, be made equal with his children in the distribution of his property, and then the balance in her hands, not otherwise disposed of, to be sold and equally divided between her and the testator's children, and in the event of her death, unmarried, then the said property to be equally divided among all my children, and that the shares, or portions, to which Mrs. Duncan and Mrs. Mercier may become entitled under this clause of the will, shall be secured to them and their children by the executors of the will, who were empowered to make such conveyance in trust or otherwise, as should secure the said shares to the sole and exclusive use and benefit of the said Mrs. Duncan and Mrs. Mercier, and their children, and in the event of the death of either of the testator's said daughters, without issue, then their said distributive shares should revert back to said estate, to be equally distributed amongst the balance of the testator's children.

The eleventh item imposes a forfeiture on any one of the testator's children who refuses to bear his or her equal proportion of the expense of any lawsuit, or judgment, that may come against the estate.

The twelfth item appoints the testator's wife, Frances Horton, executrix, and his two sons, Thomas R. Horton and Jeremiah S. Horton, executors of said will.

After the making of the will, and before the death of the testator, Mrs. Frances Horton and John H. Horton both died— the said John H. Horton leaving neither wife nor children.

The testator died, leaving the said will in full force, and the same was duly proven and recorded, and the said Jeremiah S. Horton and Thomas R. Horton assumed the execution of said will as executors.

Thomas D. Mercier was duly appointed trustee for his wife, Rebecca M. Mercier, and her children, with notice to, and by consent of, said executors, and, as such trustee, filed his bill in the Superior Court of Troup county, against the said executors, praying that they might be decreed to account and pay over to him the one-fourth part of the proceeds of all the property bequeathed to the said Frances Horton in and by said will, and also the one-fourth part of the proceeds of all the property bequeathed to the said John H.

Horton, and also the one-fourth part of all the property not otherwise specifically disposed of by said will.

To this bill the executors filed their answers in the nature of a cross bill, alleging, amongst other things: That, in their opinion, the trust, declared in the tenth item of the will of the testator, attaches in all its terms to the property bequeathed by the fifth item of the will, and they pray in their said answer, that guardians *ad litem* may be appointed to represent the children of Mrs. Rebecca M. Mercier in said litigation, and that Thomas D. Mercier may be decreed to declare his acceptance of the trust as to all the property mentioned in said will, or that he may be charged therewith by the decree of the Court, and that said executors may be fully instructed as to their duty in executing said will in relation to the question whether or not the property given to Mrs. Mercier by the fifth item of said will, is not subject to the same trust which is declared in and by the tenth item of said will.

Thomas D. Mercier, in answer to the allegations of said answer of the executors, alleges: That the negroes mentioned in the fifth item of the will were given to him and his said wife shortly after their marriage, and before the will was made; he admits that his children are interested in the decree to be pronounced in this case, but says that he has been appointed trustee for them, and is ready to protect their interests.

The answer of Thomas D. Mercier was excepted to by counsel for the executors on several grounds, which need not be stated.

The exceptions were overruled, on the ground that the executors were not entitled, either as such executors, or in their individual character, to the relief prayed for in their answer, and this decision is the error assigned in this case.

B. H. BIGHAM, for the plaintiff in error.

BULL, for the defendants in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

Jeremiah Horton, deceased, bequeathed by his will a considerable estate to his wife and children, and directed, amongst

other things, that certain portions of his property, which he specified, should be, by his executors, settled in trust upon his married daughters—Mrs. Thomas Mercier being one of them. By the consent and co-operation of the executors, Thomas Mercier, the son-in-law, was duly appointed by the Court trustee for his wife and children; and under and by virtue of this appointment, he received from the executors upwards of $1,800, and then filed his bill to recover the balance in their hands of the trust property coming to his wife and children, which the jury have found to amount to $1,100, and more.

The executors, under Stubb's Act, passed December, 1857, (*Pamphlet, p.* 106), filed their answer in the nature of a cross bill, suggesting that, by the fifth item of his will, Jeremiah Horton had given certain negroes—then in the possession of Thomas Mercier—to his wife and children, and alleging that Thomas Mercier was claiming these negroes as his own, by virtue of a gift made by the testator long prior to his death.

The executors insist that the will presents a case of election, and that before Thomas Mercier is permitted to recover the balance of the trust money in their hands, that he shall be compelled, by some writing, to make known that he holds the negroes, already in his possession, as a part of the trust estate of his wife and children. They, further, express an apprehension that, inasmuch as they consented to the appointment of Thomas Mercier as trustee, and paid him over a part of the trust fund; that if it should turn out that the slaves mentioned in the fifth item of the will, belonged to the wife and children, and that they should be wasted, and that they, the executors, took no steps to protect the rights and interests of the children, they would make themselves personally liable.

An answer was put in by Thomas Mercier to the answer of the executors, in the nature of a cross bill, which was excepted to for insufficiency, and upon argument upon the exceptions, the Court held, there was no need for an answer at all, for the reason that the executors had no right to interfere in the matter.

And this, by the way, presents a case for the construction of the Act of 1857, and for the establishment of the practice under it. The statute does not prescribe what shall be done,

provided there be no equity in the case, made by the answer in the nature of a cross bill. Shall it be demurred to? or shall the original complainant, now a quasi defendant, refuse to answer?

Having no respect for forms, myself, I look upon it as quite an immaterial matter. At any rate, we see no reason for over-ruling the course pursued by our Brother Bull. Like myself, he always looks to the substance of things, disregarding the shadow.

The question presented is: Was this a case of election?

Much authority was on hand to discuss this doctrine of election. No reference, however, was made to *McGinnis vs. McGinnis* (1 *Kelly*, 496), where this doctrine is fully treated.

Election is of two kinds—positive and constructive. If two legacies are left in the alternative to the same legatee, he must elect which of the two he will take. He is not allowed to claim both. But there are also cases of constructive election, where the taking of one thing would be inconsistent with the idea of taking another. The Courts look to the intention of the author of the instrument. This intention is supposed to extend to the whole instrument; and that some part of it would be frustrated, if the whole is not carried out. The principle goes further, and holds that, by taking a benefit under the instrument, you affirm the whole, and agree to submit to the burdens which it imposes.

Apply these tests to the case under consideration. Suppose the wife and children of Mercier never get the property attempted to be disposed of by Jeremiah Horton, by the fifth item of his will, his intention is neither marred nor frustrated, as to his general dispository scheme. They still take, in common with all the other children, their equal share or portion of all the property in which a trust was created, there being no trust declared by the will as to the property contained in the fifth item. Had the testator known that Mercier would claim these fifth item negroes as his own, there is no reason to suppose that he could have given any more of his estate to Mercier's family. They are made equal participants with the rest in all the residue of his estate.

And, then, what benefit does Mercier take that should require him to renounce his claim to the fifth item property? None whatever. He was not nominated trustee by the will. Suppose some one else had been appointed—as anybody else

might have been—what, then, would have become of this question of election? That trustee would have claimed what Mercier is contending for, and Mercier would not have been heard from at all. He would simply have retained possession of the property which he already holds, leaving the trustee to prosecute the rights of his wife and children. He being trustee, does not alter the legal view of the question. In truth, the executors are seeking to make a case of election, not under the will—where alone it can arise—but outside of the will, which can not be done.

If the executors feel it to be their duty to attempt to recover the fifth item negroes, either as executors of Jeremiah Horton, or next friend or guardian of the children, let them do so. Suit may be immediately instituted and the remedy at law is fully adequate and complete to try the titles to the fifth item property.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.