## 23842. ATLANTIC COAST LINE RAILROAD COMPANY v. WILLIAMS.

DECIDED NOVEMBER 13, 1934. REHEARING DENIED MARCH 1, 1935.

*Wilson, Bennett & Pedrick,* for plaintiff in error.

*Parker & Parker,* contra.

GUERRY, J. ■ The Atlantic Coast Line Railroad maintains for the benefit of its employees what is known as a "Relief Department," which is in the nature of a mutual benefit association, and is in the executive charge of the superintendent. The object of this department is the establishment and management of a fund known as the "relief fund," for the payment of definite amounts to employees contributing thereto who are known as members of the relief fund, whenever they, under the rules and regulations, are entitled to such payment by reason of sickness or accident, and in event of death a named amount is paid to their beneficiary. Membership in this fund is terminated whenever the member ceases to be an employee of the Atlantic Coast Line Railroad Company. It is also provided that members of this relief fund shall have free surgical treatment in one of the hospitals under its control, when requested by a medical examiner and authorized by the superintendent or chief surgeon. John Williams, the deceased, became an employee of the Atlantic Coast Line Railroad Company in 1912, and at that time also became a member of the Relief Fund, and continued in such relationship until July 1, 1922, at which time he went out of the employ of the company by reason of a general strike and his membership in the Relief Fund automatically ceased. It appears that after two months he again became an employee of the Atlantic Coast Line Railroad Company, and again on October 21, 1922, made an application for membership in the Relief Fund. On

May, 25, 1923, there was delivered to him a certificate of membership in the Relief Fund as follows: "Atlantic Coast Line Railroad Company. Relief Department. Certificate of membership in the Relief Fund. No. 108295. This certifies that John Williams, employed by the Atlantic Coast Line Railroad Company, is a member of the Relief Fund of the Relief Department of the Atlantic Coast Line Railroad Company, and is entitled to the benefits provided by the regulations of the Relief Department for a member of the Fourth Class with no additional death benefit of the first class. Robert S. Slocum, Superintendent of the Relief Department. Office of the Superintendent. Wilmington, N. C., May 25, 1923." This certificate, together with a copy of the rules and regulations of said Department, was brought home on that date by John Williams, the deceased, who gave it to his wife for safe-keeping. This is the certificate on which the present action was brought by his wife, Mae Ella Williams, when John Williams died August 5, 1931. He was continuously in the employ of the Atlantic Coast Line Railroad Company from May, 1923, until the time of his death. There was evidence introduced in support of an amendment to the petition (which we will hereafter in this opinion hold was properly allowed by the trial judge), showing that during this period from May, 1923, until his death, John Williams and his child had been accepted as a member of this Relief Department by reason of the fact that medical and surgical treatment was given to him and to his child at twelve or fifteen separate times during this period in the hospital at Waycross maintained for the use of the members of such fund. He was taken sick eight days before his death and carried to this hospital, and there operated upon for appendicitis, and his death ensued while he was being cared for at this hospital. There was evidence that no person is supposed to be admitted to the hospital of the company unless he is a member of the Relief Fund.

When suit was filed by his wife after his death the company denied that John Williams was a member of such Relief Fund and that any certificate of insurance had ever been issued to him. By amendment the plaintiff alleged that ever since said certificate of membership in said fund had been received, the deceased was treated by said company in its hospital in Waycross as a member thereof, without any question as to his membership, and that not until after

his death did the plaintiff know that there was any question as to his membership in such Relief Fund. The number of times he had received treatment as such member was alleged, and the fact that he died under treatment in said hospital and that treatment was accorded to his child in 1930, and that the book was carried to the hospital authorities. It was alleged that such claim for treatment by John Williams and his family was notice to the company of his claim of membership in said department and of the benefits he might receive at his death, and that the failure of the defendant to deny or question the right of John Williams to such benefits under the fund amounted to acknowledgment of such membership; that such conduct on the part of the defendant and its agents was misleading (if, in fact, he was not a member of said department in good standing during all the time mentioned) by causing him to believe he was insured in the sum of $1000, and thus prevented him from taking other insurance for the benefit of his family which he would otherwise have done. The defendant by its evidence showed that, according to its record kept by the superintendent, certificate 108295, issued May 25, 1925, being the certificate sued on, was issued upon an application for membership bearing the same number, to a John Williams whose family history, size, and description were entirely different from those of John Williams, the husband of plaintiff. A John Williams who answered to the description given in said application was produced as a witness, and he testified that he signed the application numbered 108295, but that no certificate had ever been delivered to him thereunder, but that dues were taken out of his pay while he worked for the company, which was less than one year. The names of the father and mother and wife of the John Williams given in the application numbered 108295 were different from the names of the father, mother, and wife of the John Williams whose wife brings this action. When the plaintiff wrote in reference to the death of John Williams she gave the number of the certificate as 108295. An examination showed that the John Williams of that number had not been in the employ of the railroad since 1923, and, after such examination, the claim was denied. The records introduced by the defendant showed that John Williams, the deceased husband of the plaintiff, became a member of the Relief Fund in 1912, and continued as such until July 1, 1922, at which time he went out on

a general strike. The certificate issued in 1912 was numbered 64173. When John Williams, the deceased, came back in the service in August, 1922, he made another application for membership in the Relief Fund, and this application, according to the records of the company was also numbered 64173. The evidence of the defendant is that this application made by John Williams was rejected, but there is no evidence that this rejection was ever communicated to this John Williams. When an application is accepted and a certificate issued thereon they are sent to the applicant's employing officer for delivery to the applicant. Contributions to the fund are deducted from the pay of each member. The defendant's evidence further showed that it had never deducted anything from the pay of John Williams, deceased, for such certificate, while, on the other hand, there was evidence by the plaintiff showing circumstances indicative that such amounts were being deducted, and that John Williams thought they were being deducted. The regulations of the Relief Department provided: "If a member's contribution is omitted from the payroll in error, the fact that such deduction has not been made shall not debar him or his beneficiary from benefits to which they otherwise would be entitled." There was much evidence tending to show that only members of the Relief Fund were accorded treatment in the hospital maintained by the company.

Exception is taken to the allowance of the amendment setting up an estoppel on the part of the defendant to deny the existence of the certificates in favor of John Williams, husband of the plaintiff. It is insisted that such amendment sets up a new cause of action and is an attempt to establish a separate contract. It is true that estoppels are not favorites of the law; that estoppel conveys no title; and that an estoppel is negative, not creative. In the case of *Fields* v. *Continental Insurance Co.*, 170 *Ga.* 28 (152 S. E. 60), it was held that where insurance policies were issued and delivered to a person other than the plaintiff, the plaintiff could not in his own name maintain an action on said policies, for a loss occurring, without showing a written transfer thereof. Estoppel in such a case does not convey title. If the legal title had been prima facie in the plaintiff, estoppel might have been pleaded or shown to aid in maintaining such title. In the present case, the issuance and delivery by the company of the certificate to the deceased bearing his name, it having all the requisites of a

valid policy, was sufficient to make out a prima facie case and place the burden on the defendant to show that such policy, issued to John Williams and delivered to John Williams, was not in fact intended for John Williams. John Williams, the deceased, was an employee of the company and as such had the right to make the application for membership in such fund, and did make such application. There is no evidence showing that he was ever notified that such application was rejected. A policy was issued in his name and delivered to him by the company after he had made such application. The members of the Relief Fund and the holders of such a certificate were entitled to certain benefits and hospitalization by reason of such membership. A prima facie case being shown, it was proper to plead and show that the company had, after the issuance and delivery of such a certificate, furnished to John Williams, the deceased, without objection or protest, the benefits that would go properly with the rightful holding and ownership of such a certificate. There was no infirmity on the face of the certificate or the petition. No contract was being created by the amendment, but a contract already apparently in existence was being supported by a plea and evidence tending to show a recognition and acceptance of such a contract by the defendant. An estoppel in pais operates only upon existing rights, not upon rights subsequently acquired. *Alaculsy Lumber Co.* v. *Gudger,* 134 *Ga.* 603 (68 S. E. 427). The evidence from the defendant shows that the John Williams, to whom it contends it issued the certificate number 108295, left its employ in October, 1923. It contends that it rejected the application of the husband of the plaintiff. The evidence is uncontradicted that since 1923 until the time of his death the defendant continued to accord to the husband of the plaintiff all the benefits to which he would have been entitled as the rightful holder of such certificate, without, so far as the record discloses, having ever given to him any notice of the rejection of his application and without refusing to him the benefits thereunder. "Where facts relied on to establish an estoppel do not unequivocally show an estoppel in pais, the jury, and not the judge, should determine whether the facts constitute such an estoppel." *Tune* v. *Beeland,* 131 *Ga.* 528 (62 S. E. 976). We are therefore of the opinion that the amendment to the petition was properly allowed by the trial judge.

■ Without any extended discussion of the general grounds of the

motion for a new trial, we are of the opinion that there was sufficient evidence to support the verdict for the plaintiff. It has the approval of the trial judge, and this court is without authority to interfere.

*Judgment affirmed. McIntyre, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. The original petition alleged that the plaintiff's husband became a member of the fourth class of the Relief Department of the defendant railroad, under a described certificate of membership numbered 108295 (which was attached as an exhibit to the petition), and that he remained a member under that certificate until his death, and that she, as his beneficiary *under that certificate,* was entitled to the sum of $1000. Subsequently the plaintiff offered an amendment to her petition, setting up in substance that even if her husband were not a member of the Relief Department, the defendant, by its conduct in treating the husband in its hospital in Waycross, from time to time and until his death, caused him and the plaintiff to believe that he was such a member; and that the defendant was estopped from asserting that he was not a member. The vital question made by the original declaration was whether there was a contractual relation between the defendant and the plaintiff's husband *evidenced by the particular certificate sued on,* whereas the amendment alleges that even if the particular contract set out in the original petition did not exist, the conduct of the defendant estopped it from denying that the plaintiff's husband was a member of its Relief Department. In my opinion the amendment shows that the remedy of the plaintiff, if she has one, would be an action in tort, and not one upon a contract. It seems to me that the amendment sought to set up a new cause of action, and that it should not have been allowed over the timely objections of the defendant. The error in allowing the amendment to the petition rendered the further proceedings in the case nugatory. I think that the judgment should be reversed and another trial had.