RIEVES *v.* SMITH, executor, *et al.; et vice versa.*

658

Nos. 11668, 11727.  July 22, 1937.

*Herbert R. Edmondson, John S. Wood,* and *Morris & Welsch,* for plaintiff.

*Charles J. Thurmond* and *Wheeler & Kenyon,* for defendant.

JENKINS, Justice.  ■  A definite contract in parol to adopt another person as a child, if based upon a sufficient consideration, and if supported by satisfactory proof, may be enforced in equity with respect to any claim which he as a child may have against the estate of such adopting parent. *Crawford* v. *Wilson,* 139 *Ga.* 654 (4), 658, 662 (78 S. E. 30, 44 L. R. A. (N. S.) 773) ; *Lansdell* v. *Lansdell,* 144 *Ga.* 571, 573 (87 S. E. 782) ; *Rahn* v. *Hamilton,* 144 *Ga.* 644 (87 S. E. 1061) ; *Richardson* v. *Cade,* 150 *Ga.* 535, 538 (104 S. E. 207) ; *Shropshire* v. *Rainey,* 150 *Ga.* 566, 569 (104 S. E. 414) ; *McWilliams* v. *Pair,* 151 *Ga.* 168 (106 S. E. 96) ; *Ansley* v. *Ansley,* 154 *Ga.* 357 (114 S. E. 182) ; *Ray* v. *Kinchen,* 166 *Ga.* 788 (144 S. E. 317) ; *Scott* v. *Scott,* 169 *Ga.* 290 (150 S. E. 154) ; *Columbus Bank & Trust Co.* v. *Jones,* 176 *Ga.* 620 (168 S. E. 561) ; *Fussell* v. *Daniels,* 179 *Ga.* 462 (176

S. E. 369). It is unnecessary for the petition in such a case to allege particularly as to the value of the agreed services which were to be performed or which were performed by the person to be adopted. *Morris* v. *Dunaway,* 176 *Ga.* 881 (2), 883 (169 S. E. 129); *Hardeman* v. *Ellis,* 162 *Ga.* 664 (13), 694 (135 S. E. 195), and cit.; *Hankinson* v. *Hankinson,* 168 *Ga.* 156 (2), 163 (147 S. E. 106). Under these rules, the first count of the petition against the executor of a will, by one claiming the residuary estate as the heir at law of the testator under a contract of virtual adoption, sufficiently set forth such an oral contract, based upon a legal consideration fully executed and performed by the plaintiff and his mother, and repeatedly recognized by the decedent and the plaintiff as a valid agreement, and was not subject to the' grounds of special demurrer attacking the sufficiency of particular allegations.

■ The court did not err in striking the second count of the petition on the ground of demurrer that it was multifarious. A cause of action grounded upon an alleged contract of virtual adoption, made between the plaintiff's mother and the decedent, whereby the plaintiff was to become the virtually adopted child of the decedent and as such would receive all of the decedent's property at his death, is separate and distinct from a cause of action grounded upon a new, separate, and independent contract or transaction, based upon a new, separate, and independent consideration, and made, not between the decedent and the plaintiff's mother, but between the decedent and the plaintiff himself after attaining his majority. In like manner, the alleged second transaction just mentioned, whereby the plaintiff after majority took care of the decedent during the latter's lifetime, and helped the decedent in the conduct of the latter's professional duties and in the management of the latter's properties, upon his representations that the plaintiff was to be the child of the decedent and at the death of the decedent receive all his property, is, like the first alleged contract, separate and distinct from a subsequent agreement, whereby, in consideration of the recognition by the decedent of the plaintiff as a virtually adopted child and the promise by the decedent that he would see to it that the plaintiff as such would receive all of his properties at his death, the plaintiff, as a new and independent consideration, agreed to settle and did aban-

don and settle a valid claim for damages against the decedent for an alleged tortious personal injury. In order for an action to be maintained on each of these separate and independent contracts, they should have been embodied in separate and independent counts. See *Orr* v. *Cooledge,* 117 *Ga.* 195, 205 (3) (43 S. E. 527); *Smith* v. *McWhorter,* 173 *Ga.* 255, 263 (160 S. E. 250); *Pitts* v. *Smith,* 108 *Ga.* 37, 40 (33 S. E. 814); *Endsley* v. *Ga. Ry. & Power Co.,* 37 *Ga. App.* 439, 443 (140 S. E. 386); *Daniels* v. *Booker,* 23 *Ga. App.* 644 (99 S. E. 228); *Harris* v. *Wilcox,* 7 *Ga. App.* 121 (66 S. E. 380); 49 C. J. 160, § 177.

■ "Whenever the subscribing witnesses to an instrument in writing are dead, insane, incompetent, or inaccessible, .. . proof of the actual signing by, or of the handwriting of, the alleged maker shall be received as primary evidence of the fact of such execution; and if such evidence shall not be attainable, the court may admit evidence of the handwriting of the subscribing witnesses, or other secondary evidence, to establish such fact of execution." Code, § 38-707. Exception is taken, on the ground that there was no proper proof of execution, to the admission of a written contract dated August 28, 1896, executed by plaintiff's mother by mark and by the decedent and his wife with their purported signatures, in which the mother in terms "binds and apprentices" plaintiff until he "is twenty-one years old," with the usual provisions of a mere contract of apprenticeship. The instrument provided that the decedent and his wife should have the plaintiff's custody, services, and earnings, and in return should furnish him with protection, wholesome food, clothing, medical attention, and an elementary education, until he was twenty-one years old, when he was to receive $100 in cash. No other obligation was imposed on the decedent or his wife. The instrument bore the names of two subscribing witnesses, one a justice of the peace, and the following entry on the back: "Ordinary's office, Forsyth County, Georgia, October 24, 1896. Recorded in Book P for Bonds and Letters, on page 149. H. L. Hawkins, Ordinary. Indenture of Apprenticeship between George P. Brice and A. A. Brice and S. E. K. Shoemake. Original. Filed in office, August 29, 1896. H. L. Hawkins, Ordinary." The contract of apprenticeship thus purported to be witnessed and recorded as provided by the act of March 17, 1866, section 3 (Code, § 66-201). The signatures of the

testator, his wife, and of both subscribing witnesses were proved, and there was proof that all of them and plaintiff's mother, who signed by mark, were dead. There was evidence that the paper was found among the effects of the decedent after his death in 1935, and that it subsequently went through the hands of two or three persons before it was offered in evidence. The instrument was properly admitted as having been sufficiently proved, irrespectively of whether or not there was a sufficient compliance with the rule admitting ancient writings without proof. See, with reference to the admission of ancient writings, Code, §§ 38-212, 29-112; *Settle* v. *Alison*, 8 *Ga.* 201 (3), 206 (52 Am. D. 393); *Adams* v. *Dickson*, 23 *Ga.* 406, 410; *Bunger* v. *Grim*, 142 *Ga.* 448 (4) (83 S. E. 200, Ann. Cas. 1916C, 173).

In the trial on the first count of the petition, the judge charged the jury as follows: "The defendant further contends, by special plea filed on this day, that instead of there being any parol contract between the plaintiff's mother and the deceased . . and his wife, it is alleged by the defendant that on the 28th of August, 1896, [the deceased] and his wife . . entered into a contract with . . the mother of the plaintiff. . . It is further alleged that said contract was and is in writing, and speaks the entire agreement between the mother of the plaintiff . . and [the deceased] and his wife, . . and that by the terms thereof . . the said [plaintiff] was not and is not entitled to inherit any part of the estate of [the deceased]. If you should find that following negotiations between the parties, that is, between the plaintiff's mother and [the deceased] and his wife, . . the contract which was made between them was reduced to writing, and that the contract contended for by the defendant is the contract entered into between them, if you believe that it was, then the plaintiff would not be entitled to recover in this case; for I instruct you that if you should find that a contract was made in the terms of the writing which has been introduced before you, dated August 28, 1896, purporting to be between [the deceased, his wife, and the mother], then under its terms the plaintiff would not be entitled to inherit any property from the estate of [the deceased]. And if you should believe from the evidence that that contract was entered into by and between [the deceased] and his wife . . on the one side, and [the mother] on the other side,

and if you should find that [she] was the mother of the plaintiff, . . then it would be your duty to return a verdict in favor of the defendant in this case." The jury found for the defendant executor. Exception is taken to the instruction, as in effect directing a verdict for the defendant, under the written contract of apprenticeship, and as excluding from the jury the averments and evidence that the decedent, not only during minority, but after the majority of the plaintiff, repeatedly stated to him "that [plaintiff] was [the] son [of the decedent and his wife], that they had agreed to adopt him as their child, that he was their child, that all of the property that they possessed at the time of their death would go to and be inherited by [plaintiff];" that "it is not disputed by the evidence in said cause that [plaintiff], his wife and children, cared for the said decedents, waited upon them, looked after their property for nearly forty years, without compensation, relying upon their said representations and statements that [plaintiff] would inherit all of their property at their death." The exception further states that under the allegations and the evidence set forth in this ground the decedent and his wife, "both before and after movant arrived at the age of twenty-one, stated and agreed with him, and repeatedly promised him that if he would help take care of them and help manage their property until their death, they would adopt him and he would inherit all of their property;" that "movant accepted the said proposition made by the said deceased, and relied upon the said promises and agreement, and fully carried out his part of the same;" and that "for these reasons, it was the duty of the court to submit to the jury the question as to whether or not there was any agreement made between movant and the said decedents, both during his minority and after his majority, that they would adopt him and he would inherit all of their property at the time of their death, as their child and sole heir," and whether "movant complied with his part of the said agreement on the strength of the said promises of the said decedents, and in good faith, believing they would carry out their contract, and not to limit the right of movant's recovery in said case, as was done." It is further stated that "this charge expressly eliminated from the consideration of the jury the contention of movant that he was in fact the virtually adopted son of the said deceased . . and his said wife, under

the allegations of fact and evidence herein quoted in this ground, independently of the alleged written contract or parol contract, and was entitled to a verdict, judgment, and decree of the court, declaring movant to be the sole and legal heir" of the decedent, as prayed in the first count.

The written contract made by the mother with the decedent and his wife, which was referred to in the instruction and is described in the preceding division of the opinion, is plainly one of apprenticeship, and is wholly inconsistent with any prior or contemporaneous negotiations and contract of adoption on the part of the mother. The plaintiff at the time of suit in 1935 was forty-six years old. The contract of apprenticeship, made in 1896, describes him as then eight years and three months old. The testimony of a brother of the mother, by which an oral contract of adoption by the mother was sought to be established, was that while the plaintiff and his mother were living with the witness at the time in question, the plaintiff was "right around eight years old," and the witness heard an oral agreement between the mother and the decedent and his wife, which was substantially as contained in the written contract of apprenticeship, except that the witness testified that the decedent then further agreed that he would "treat [plaintiff] like one of his own children, adopt him later on;" that "he said he would adopt him later on, and at his death [the plaintiff] would share like his child;" that the plaintiff's "mother told [the decedent] she would give him to him if he would take him and adopt him so he could fare as one of his children, and he agreed to do it." There was evidence to the effect that during majority the decedent repeatedly told the plaintiff that he was the adopted son of the decedent, and the decedent told the plaintiff that "when [the decedent] took [the plaintiff] from his mother [the decedent] had made an agreement to give [the plaintiff] all of [the decedent's] property at his death, that he had agreed to make him his sole heir and give him his entire estate at his death;" that the decedent requested the plaintiff to "look after [the] farm [of the decedent] as if it was his;" that on an occasion when the plaintiff was injured in a well, soon after his majority, the decedent told him that he "would get [the decedent's] property at his death . . that [the decedent] wanted to keep it together while he lived;" and that "everything I have

is your own any way." There was also much evidence as to the continued services rendered to the decedent by the plaintiff and his family during the more than twenty years following his majority, without receiving compensation.

Under the doctrine of estoppel in pais, if a representation be made to another who deals upon the faith of it, the maker must make his representation good if he knew or was bound to know that it was false, and thereby receives a benefit or causes detriment to the other. *Elliott* v. *Keith,* 102 *Ga.* 117, 120 (29 S. E. 155) ; *Tompkins* v. *Philips,* 12 *Ga.* 52, 56; Code, § 38-114. The operation of this principle is not direct so as to create a new right in the opposite party, but primarily indirect and negative against the party making the statement, precluding him and his privies from denying the truth of the statement or basing a defense on its untruth. *Corporation of the Royal Exchange Assurance of London* v. *Franklin,* 158 *Ga.* 644 (124 S. E. 172, 38 A. L. R. 626) ; *Hood* v. *Duren,* 33 *Ga. App.* 203 (2) (127 S. E. 787), and cit. A person may thus be estopped from questioning the existence or effect of a contract, the existence of which he has asserted to the other party, to his own benefit or the injury of the other. *Atlantic Coast Line R. Co.* v. *Williams,* 50 *Ga. App.* 726, 729 (179 S. E. 136) ; *Russell* v. *Turner,* 14 *Ga. App.* 344 (4) (80 S. E. 731) ; *Price* v. *Thompson,* 4 *Ga. App.* 46 (3), 48 (60 S. E. 800) ; 21 C. J. 1209, and cit. While "the general rule is that estoppel, to be relied on, must be pleaded" (*Askew* v. *Amos,* 147 *Ga.* 613, 95 S. E. 5; *Irvine* v. *Wiley,* 145 *Ga.* 867 (3), 868, 90 S. E. 69; *Martin* v. *Yonce,* 163 *Ga.* 694 (5), 137 S. E. 17), yet there are well-recognized exceptions to this general rule. Thus, since it is unnecessary under our pleading act to file a replication, "this rule does not apply where the plaintiff relies upon estoppel in order to defeat a defense raised by the defendant in his answer," and in such a case "evidence in rebuttal of other evidence [of the defendant] is admissible for the [plaintiff] for the purpose of showing an estoppel, even though estoppel is not pleaded." *Brown* v. *Globe &c. Fire Ins. Co.,* 161 *Ga.* 849, 854 (133 S. E. 260) ; *Wright* v. *McCord,* 113 *Ga.* 881, 883 (39 S. E. 510) ; *Davis* v. *Citizens Floyd Bank & Trust Co.,* 37 *Ga. App.* 275 (4), 277 (139 S. E. 826). Nor, if the elements and facts of an estoppel are set out, is it "necessary that the pleader should have used the

word 'estoppel.'" *Broderick* v. *Reid,* 164 *Ga.* 474 (3) (139 S. E. 18).

Under the rules stated, the plaintiff having not only pleaded an oral contract of adoption made during his minority by his mother with the decedent, but having further pleaded his reliance upon representations by the decedent after majority to the effect that the decedent had agreed with the mother to make him the child or heir of the decedent and give him the decedent's property, and that he was such a child of the decedent, the plaintiff was not precluded from receiving any benefit from testimony, introduced without objection, to support this additional pleading, and to rebut the defendant's plea and evidence that the mother's contract was in writing and was one merely of apprenticeship. This testimony for the plaintiff created an issue for the jury as to whether or not, even though the written contract with the mother was in fact one of apprenticeship, the executor of the decedent's will was estopped by representations to the plaintiff from asserting such a true fact, if the plaintiff, relying on such representations, performed services after majority, as alleged and testified, to the benefit of the decedent or the detriment of the plaintiff. There was no testimony to indicate that the plaintiff ever saw or knew of the mother's written contract of apprenticeship, which was found among the effects of the decedent after his death. For these reasons alone, and solely because of the alleged representations and the evidence relating thereto, the charge of the court that the written contract of apprenticeship made by the mother would alone control was erroneous, and the refusal of a new trial must be reversed.

■ The defendant's cross-bill of exceptions complains that the plaintiff should have been required to elect whether he would claim under or against the will. This ground of demurrer was entered against both counts of the petition. The second count having been adjudged to have been properly dismissed on the ground of multifariousness, we must consider the cross-bill with reference to the first count, on which the case was tried and will be retried. This count alleged that the plaintiff claimed "under the provisions of paragraph five [of the will] certain real estate [devised] to petitioner and his wife and four children;" and prayed that the executor "be permitted and directed . . to comply" with this

and other special legacies in the will "by delivering to the beneficiaries thereunder the special bequests therein made." The plaintiff, while not attacking the will as a whole, set forth an intestacy as to the property devised by the residuary item, in that it attempted to dispose of about 95 per cent. of the estate for educational purposes, in violation of the Code, § 113-107, contrary to the plaintiff's right as a virtually adopted child. The defendant demurred on the ground that this count "both claims a benefit entirely inconsistent with [the] will . . and at the same time claims a benefit under the will, and plaintiff should elect upon which right he will stand." The Code declares: "A legatee taking under a will shall allow, as far as he can, all the provisions of the will to be executed. Hence, if he has a claim adverse to the will, he shall be required to elect whether to claim under the will or against it. The mere fact of being a creditor shall not constitute a case for election." § 113-819. "A case of election arises whenever a person is entitled to one of two benefits, to each of which he has legal title, but to enforce both would be unconscionable and inequitable to others having claims upon the same property or fund. In such cases equity may compel an election." § 37-501. "When a testator has attempted to give property not his own, and has given a benefit to a person to whom that property belongs, the devisee or legatee shall elect either to take under or against the will. The rule shall not apply, if the will itself, from other causes, is not effective in passing the title to the property of the devisee or legatee; nor if the testator has an interest in such property upon which the will may operate; nor if the bequest shows that the testator intended to bequeath only in the event that his own title was good; nor if the benefit given to the party called upon to elect is not from testator's own property, but by virtue of a power of appointment in him." § 37-502. These sections must be construed together, and be considered in the light of the decisions of this court and equitable rules as to when a legatee will be compelled to elect.

While the general basis and effect of this doctrine of election is stated in broad and general terms by the Code, § 113-819, and while it has been said that if a legatee "accepts a benefit under [the] will, [he] must adopt the whole contents of the instrument, conforming to all its provisions, and renouncing every right in-

consistent with it" (*Harber* v. *Harber,* 158 *Ga.* 274, 276, 123 S. E. 114; *Miller* v. *Cotten,* 5 *Ga.* 341; *McFadden* v. *Dale,* 155 *Ga.* 256, 116 S. E. 596; *McGinnis* v. *McGinnis,* 1 *Ga.* 496; *Horton* v. *Mercier,* 31 *Ga.* 225, 230; 69 C. J. 969-971, 1089, and cit.; Red-fearn on Wills, 288, 289), yet these decisions and authorities, as will be presently shown, each appears to recognize that such a case for an election does not arise except where the conditions stated in the Code, §§ 37-501 and 37-502 exist. In the case strongly relied on by the plaintiff in error in the cross-bill (*Miller* v. *Cotten,* supra), it is clearly shown that the testator must have "affected to dispose of *property which is not his own,*" and "must have given a benefit to the person to whom *that property belongs,*" before he will be required to "make good the testator's attempted disposition." As stated in *Harber* v. *Harber,* supra, after quoting the general principle as expressed in the *Miller* case, "a case of election only arises when a person is entitled to one of two benefits to each of which he has the legal title;" and "an election can exist only where there is a choice between two or more inconsistent remedies actually existing at the time" of election (p. 277). *McFadden* v. *Dale,* supra, after quoting the general principle as stated in § 113-819, immediately follows it with the language above quoted from *Miller* v. *Cotten,* supra, recognizing the rules codified in §§ 37-501 and 37-502 as conditions necessary for an application of the general doctrine. The *McFadden* case concludes that the principle was not there applicable, since "the will does not designate any particular property, but only purports to devise and bequeath such property as might belong to the testator in his own right." In *McGinnis* v. *McGinnis,* supra, the testator had bequeathed property actually belonging to one of his sons, which put that son to an election between his own right and the legacy to him. In *Horton* v. *Mercier,* supra, the rule as to necessary "inconsistency" again finds expression in the statement "where the taking of one thing would be inconsistent with the idea of taking another." The text-writers have recognized, in language similar to that of §§ 37-501 and 37-502 and our decisions, the conditions there stated, which qualify the general rule of election in its application to wills. Thus, as stated in 69 C. J. 1090, § 2331, and cit., not only must there be "a plurality of gifts or remedies," but "their validity must be established," and "their inconsistency proved."

As expressed in 28 R. C. L. 329, 330, §§ 317, 318: "The choice is compulsory between two inconsistent rights or claims where there is a clear intention of the testator that the beneficiary shall not enjoy both. . . Where a testator, after devising property owned by him to one beneficiary, assumes to devise to another property belonging to the first devisee, the devisee of the property owned by the testator, if he accepts the devise with knowledge of the facts, is precluded from asserting a claim to his own property devised to the other beneficiary. In other words, a legatee claiming under a will that devises away property of which he is owner can have the benefit of his legacy only upon renouncing in favor of the devisee his right" to his own property which the testator has devised to another. "The beneficiary must elect between keeping his own and taking what is given by the will." In 4 Schouler on Wills, Executors, and Administrators (6th ed.), 2638, stating the general doctrine substantially as in the Code, our decisions, and other authorities, it is said: "An 'election' in equity is a choice which a person is compelled to make between the acceptance of a benefit under an instrument and the retention of his own property which is attempted to be disposed of by that instrument." That these rules must be taken as the proper construction by our decisions of the Code, with reference to election, is shown by the ruling in *Trustees of the University of Georgia* v. *Denmark,* 141 *Ga.* 390 (3, a), 401 (81 S. E. 238). That was a case where a wife, to whom was bequeathed money or income from property in lieu of dower, elected to take the bequest under the will; and it was held that she was not thereby estopped from attacking as void a devise to an educational institution of more than one third of the estate, under the same statute which is invoked in the instant case. See also *McCarty* v. *Mangham,* 144 *Ga.* 198 (86 S. E. 555) ; *Thomas* v. *Morrisett,* 76 *Ga.* 384 (5) ; 69 C. J. 973. Under the decision in the *Denmark* case and the rules before stated, the court did not err in refusing to require the plaintiff to elect under the first count, and in overruling the demurrer thereto. This ruling was not error, for an additional reason. In *Lamar* v. *McLaren,* 107 *Ga.* 591 (3), 605 (34 S. E. 116), it was held that a plaintiff would not be compelled to elect between a legacy and a "mere claim" to property "until after there has been in this case an adjudication of the question whether

or not he is in fact the owner of an interest in the property . . disposed of by the will, and then only in the event this issue is determined in his favor;" since if he were first compelled to elect, and he should for any reason fail in the trial to establish his claim, there would be no defeated or disappointed legatees to compensate, "but, on the contrary, the other legatees would get the very property he claimed." In the instant case also, the claim of the plaintiff to the property devised by the residuary item of the will would remain undetermined until the issue as to the alleged virtual adoption has been adjudicated.

*Judgment reversed on the main bill of exceptions, and judgment affirmed on the cross-bill. All the Justices concur, except Beck, P. J., absent because of illness.*