McFADDEN, executrix, *et al. v.* DALE.

ATKINSON, J. 1. Where there are three executors qualified under a will, one of them in his individual capacity may, without resigning as executor, sue the other two in equity, as representatives of the estate, to establish an implied trust in his behalf as to an undivided interest in property purchased during the life of the testator with joint funds, title to which was taken in the name of the testator. *MacDougall* v. *National Bank of Columbus,* 150 *Ga.* 579 (104 S. E. 630).

(a) The case does not fall within the principle of section 3910 of the Civil Code, which declares: "A legatee taking under a will must allow, as far as he can, all the provisions of the will to be executed. Hence, if he has an adverse claim to the will, he will be required to elect whether he will claim under the will, or against it. The mere fact of being a creditor does not constitute a case of election." Nor does it fall within the following principles stated in *Miller* v. *Cotten,* 5 *Ga.* 341: "If a testator has affected to dispose of property, which is not his own, and has given a benefit to the person to whom that property belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition. For the doctrine of election is, that he who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions, and renouncing every right inconsistent with it." In the case stating the principle which is quoted, the will "affected to dispose of" the property which the executor in his individual capacity was seeking to recover, whereas in the case under consideration the will does not designate any particular property, but only purports to devise and bequeath such property as might belong to the testator in his own right.

2. Paragraph 16 of the petition was: "Petitioner alleges that all transactions where the joint property of petitioner and her father, Roy T. McFadden, was sold or incumbered, and the money received from such sales or incumbrances reinvested in the present property, were by your petitioner entrusted entirely to her father. Petitioner's father acted for her as agent, and for her and himself jointly in all such transactions. She never questioned anything that her father did, knowing that her father was working in the interest of their joint business; and never for a moment thinking that her interest

in the business and property would be questioned, she signed all papers her father told her to sign,. and agreed to any disposition of their property that her father advised would be for the best interest of their business and property." *Held*, considering the above allegations in connection with other allegations to the effect that plaintiff was a minor at the time " the papers " were executed under which lots numbers 94, 95, 96, and 97 were purchased, and allegations that the plaintiff did not " inquire " as to the character of the papers, but trusted all to her father in whom she confided as her agent, that the petition was sufficient to allege the creation of an implied trust. The case on its facts differs from *Wilder* v. *Wilder*, 138 *Ga.* 573 (75 S. E. 654); *Brown* v. *Carmichael*, 152 *Ga.* 353 (110 S. E. 3).

3. Whether or not a trust would be implied in the circumstances would affect only the immediate parties to the suit, and consequently reformation of the deed would be unnecessary; and the petition was not demurrable on the ground that the grantors in the deeds conveying the property to the testator were not made parties to the action.

4. In the circumstances alleged as to the manner in which the lots in controversy were obtained, and as to the possession of the property, and recognition by the testator, as long as he lived, of the plaintiff's right to an undivided interest in the property, the action was not barred by the statute of limitations. *Roach* v. *Roach*, 143 *Ga.* 486 (85 S. E. 703).

5. The judge did not err in overruling the demurrer to the petition.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting. Hill and Gilbert, JJ., concur specially as to the ruling in the first headnote.*

No. 3031. MARCH 3, 1923.

Equitable petition. Before Judge Meldrim. Chatham superior court. December 10, 1921.

The exception in this case is to a judgment overruling general and special demurrers to a petition as amended. The suit was instituted on February 15, 1921, by Mrs. Queenie E. McFadden Dale against certain of the executors of the will of Roy T. McFadden, deceased. The following is a statement of the substance of the allegations. On May 24, 1909, Mrs. Bertha McFadden died intestate, leaving her husband, Roy T. McFadden, and their daughter, Queenie E., about 17 years of age, as her only heirs at law. The deceased left an estate consisting of certain improved realty in Daytona, Florida, and certain lots in the town of Tybee, Chatham County, Georgia, on which was located a hotel called " Sea Breeze Hotel," with its furnishings and equipment, in which she was engaged in the business of conducting a hotel. McFadden became administrator both in Georgia and Florida. McFadden and his minor daughter continued to operate the hotel until the

17

marriage of the latter in 1911 to James J. Dale, and thereafter both Mr. and Mrs. Dale worked with McFadden in operating the hotel. The Florida property was rented out, and the rentals mingled with money derived from the hotel business, and was used in purchasing an undivided interest in four lots on Tybee Island, Georgia, called lots numbers 94, 95, 96, and 97, on which were improvements adapted to a certain business. The purchase was made in January, 1911, from a named person, and was a joint purchase by McFadden and Arthur Raven. The price was $17,500, of which $5,000 was paid in cash, the balance being payable in the future. Raven supplied the money for half of the initial payment, and the other half was supplied by McFadden from funds derived as above indicated. " The papers " were taken in the name of McFadden and Raven. Mrs. Dale, relying on her father's judgment, consented to the transaction, and, in trusting the entire business to her father, did not inquire as to how the papers were drawn. After the purchase above mentioned, McFadden and Raven conducted business on the joint property during the year 1911, and the hotel business was conducted separately in the " Sea Breeze Hotel " by McFadden and his daughter. In December, 1912, McFadden and Mrs. Dale bought the interest of Raven in the joint property, paying a stated amount in cash which was borrowed from a bank, and assuming the balance due on the original purchase-price. In 1913 the " Sea Breeze Hotel " was moved from its old site to the newly acquired lots numbers 94, 95, 96, and 97, and in it McFadden, Mrs. Dale, and her husband continued to operate the hotel. All the income from such operation, except certain " living expenses," was used in the business of operating and maintaining the hotel and its equipment, and applied to payment of interest and reduction of that portion of the principal debt remaining unpaid which was assumed in the purchase from Raven. During the year 1913 McFadden as administrator conveyed to himself and Mrs. Dale jointly the lots on which the " Sea Breeze Hotel " formerly stood, and the Daytona property. Subsequently all of this property was sold, and the proceeds were used in 1917 and 1918 in reduction of the debt owed on lots numbers 94, 95, 96, and 97, in making improvements on such property, and in conducting the hotel. There was never any division between Mc-

Fadden and his daughter, of the property or of the money derived from the operation of the hotel. The joint operation of the hotel by McFadden and Mrs. Dale continued up to 1916, at which time they ceased such business and rented out the property, and thereafter received stated amounts for rent for the years 1917 to 1920, inclusive. As already indicated, legal title to the hotel properly as finally located on lots numbers 94, 95, 96, and 97 stood in the name of McFadden, though it represented the accumulation of joint funds. During all the times above referred to, McFadden recognized the right of Mrs. Dale to a half interest in all of the business and properties above mentioned, and, to the extent of her interest in such properties, acted as her agent in all that was done with reference to them. In 1920 McFadden died, testate, leaving Mrs. Mary Daniels McFadden, his second wife, and Mrs. Dale, his only child. Items two and three of the will were: " I direct that all of my property real and personal, consisting of real estate, stocks, bonds, moneys, or other kinds of property, shall be held by my executor and executrixes hereinafter named, for the following purposes, to wit: Out of the net income of said estate to provide a suitable and proper support and maintenance (not exceeding the sum of five hundred dollars per annum) for my father, Michael McFadden, for and during the term of his natural life. . . After the death of my said father, I direct that all the rest and residue of the corpus of my estate with any income that may have accumulated shall vest in fee simple in my wife, Mary Daniels McFadden, of Savannah, Georgia, and my daughter Mrs. Queenie Esther McFadden Dale." In other portions of the will the testator appointed his father, wife, and daughter executor and executrixes, and conferred certain powers of sale, etc. The will was duly probated, and the appointees named therein as legal representatives duly qualified as such. After qualification as executrix, Mrs. Dale instituted the action against her coexecutor and coexecutrix. The prayers were: (a) "That the title in and to an undivided one-half interest in said lots ninety-four, ninety-five, ninety-six, and ninety-seven, Tybee Island, Chatham County, Georgia, together with all improvements thereon, and the personal property within such improvements contained, and on said property, be declared to be her individual property." (b) "That she may be awarded such

sum or sums of money as may be found to be due her for rent due her on the petitioner's undivided one-half interest in and to said property." (c) for general relief and process.

*David S. Atkinson* and *Lawrence & Abrahams,* for plaintiffs in error.

*Oliver & Oliver* and *Columbus E. Alexander,* contra.