18314. Joseph *v.* Citizens & Southern National Bank, Exr., *et al.*

Candler, Justice. 1. The petition in the instant case alleges in substance: that the plaintiff and her husband engaged in business together as equal partners for nearly forty years, she furnishing the initial capital; that she trusted him implicitly to protect her interest and separate estate under their joint business arrangement; that surplus profits from their various business ventures were from time to time withdrawn by them and invested in rental properties, savings accounts, stocks, bonds, and choses in action, having a total value in excess of $65,000, as shown by a schedule or list of them attached to and made a part of the petition; that their joint and equally owned investment properties, at the time of her husband's death, "technically appeared of record and registration" in his name; that, since her husband purchased the aforesaid securities with funds belonging jointly and equally to him and her, she has an interest and equitable title in and to an undivided half of the investment properties. *Held:* as to the investment properties or securities, the petition was sufficient to allege the creation of an implied trust. Code §§ 108-101, 108-102, 108-106; *Guinn* v. *Truitt,* 148 *Ga.* 112 (1) (95 S. E. 968); *McFadden* v. *Dale,* 155 *Ga.* 256 (2) (116 S. E. 596); *McCollum* v. *McCollum,* 202 *Ga.* 406 (1a) (43 S. E. 2d 663), and citations.

2. There is no merit in the contention that the plaintiff's right to assert a claim to an undivided half of the investment properties or securities which her husband allegedly purchased and which were acquired and held in the name of her husband was barred by the statute of limitations or laches. "As long as a person who is in possession of the property of another, using the same for the owner's benefit, recognizes the latter's ownership, no lapse of time will bar the owner from asserting his title as against the person in possession. Before any lapse of time will be a bar to the owner, it must appear that the person in possession has given notice, or there must be circumstances shown which would be

equivalent to notice, to the owner that the person in possession claims adversely to him. In such a case the statute will begin to run from the date of such notice. Until the owner has such notice, he has the right to treat the possession of the other person as his own." *Teasley* v. *Bradley,* 110 *Ga.* 497, 501 (35 S. E. 782). And "where a wife places a fund in the hands of her husband, under an agreement that he is to use and improve same for her benefit, with no time fixed for an accounting and settlement between them, the statute of limitations does not begin to run against her and in his favor until after a demand for a settlement and a refusal by him to pay." *Rucker* v. *Maddox,* 114 *Ga.* 899 (2) (41 S. E. 68). See, to the same effect, *Keaton* v. *Greenwood,* 8 *Ga.* 97.

3. The case at bar does not fall within the principle of Code § 113-819, which declares: "A legatee taking under a will shall allow, as far as he can, all the provisions of the will to be executed. Hence, if he has a claim adverse to the will, he shall be required to elect whether to claim under the will or against it. The mere fact of being a creditor shall not constitute a case for election." Nor does it fall within the following principle, stated in *Miller* v. *Cotten,* 5 *Ga.* 341: "If a testator has affected to dispose of property, which is not his own, and has given a benefit to the person to whom that property belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition. For the doctrine of election is, that he who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions, and renouncing every right inconsistent with it." In the case stating the quoted principle, the will "affected to dispose of" the property which the executor in his individual capacity was seeking to recover, whereas in the case presently under consideration, the will does not designate any particular property, but only purports to devise and bequeath to the trustee all of the rest and residue of such property as might belong to the testator in his own right at the time of his death. In *First Nat. Bank & Trust Co.* v. *Roberts,* 187 *Ga.* 472 (1 S. E. 2d 12), this court, in dealing with the applicability of the principle announced in *Miller's* case, supra, to the facts of that case, in speaking through Mr. Justice Jenkins, said: "However, this doctrine does not apply where the testamentary disposition describes no specific property so as to identify it with that of the claimant, but describes the property only generally, as in this case, as 'all my real and personal property and all property of every kind and character owned by me at my death,' since the testator would be presumed to have intended to bequeath only what he actually owned and could lawfully dispose of. *McFadden* v. *Dale,* 155 *Ga.* 256 (1a) 258 (116 S. E. 596); *McGinnis* v. *McGinnis,* 1 *Ga.* 496, 503; *Lamar* v. *McLaren,* 107 *Ga.* 591, 601-602 (34 S. E. 116), and cit." See also *Rucker* v. *Maddox,* supra; *Rieves* v. *Smith,* 184 *Ga.* 657 (192 S. E. 372, 112 A.L.R. 368), and the authorities there cited. In *Miller* v. *Cotten,* supra, as this court pointed out in the *Rieves* case, supra, it was held that the testator must have "affected to dispose of property which is not his own," and must have "given a benefit to the person to whom that property belongs," before he will be required to "make good

the testator's attempted disposition." And before a legatee or devisee will be required to make an election under § 113-819 of the Code, as above quoted, it must clearly appear from the will itself that it was manifestly the intention of the testator to dispose of property not his own. *McGinnis* v. *McGinnis*, 1 *Ga*. 496. In the instant case, as we have pointed out, the testator did not devise and bequeath to the trustee any specific property, but only the unspecified residue of his estate, and it will be presumed that it was his intention to bequeath only that property which he actually owned and could lawfully dispose of.

(*a*) The motion to review and overrule *Rucker* v. *Maddox*, *McFadden* v. *Dale*, and *First National Bank & Trust Co. in Macon* v. *Roberts*, all supra, is denied.

4. Since it is alleged that petitioner's husband, during the last few years of his life and without her knowledge until after his death, wrongfully and fraudulently made large withdrawals of money from their joint and equally owned assets, which were converted to his own use and which have not been accounted for and repaid on demand, the petition as amended stated a cause of action against the executor of his estate for an accounting.

5. The judge erred in sustaining the demurrers and dismissing the amended petition.

Judgment reversed. All the Justices concur.

ARGUED SEPTEMBER 14, 1953—DECIDED OCTOBER 14, 1953.

*Myrick & Myrick, Bouhan, Lawrence, Williams & Levy,* for plaintiff in error.

*Malcolm R. Maclean,* pro se, *Douglas, McWhorter & Adams, Dennis Pierce,* contra.

The exception in this case is to a judgment sustaining demurrers which attacked the petition as amended upon general and special grounds. The suit was brought by Mrs. Callie Mae Joseph against Citizens & Southern National Bank of Savannah, Georgia, as executor of her husband's estate. Zahelia Tonous, Joseph Owens, and Elias Assad Joseph Owens, alleging themselves to be remaindermen under the will of B. A. Joseph, intervened and were made parties defendant to the cause. The court also appointed Malcolm R. Maclean as guardian ad litem to represent the descendants of the remaindermen. The following is a statement of the substance of the allegations: B. A. Joseph died in 1951. He had no children and was survived by his wife. He left a will which was offered for probate by Citizens & Southern National Bank of Savannah, the nominated executor, and it was probated in solemn form in the Court of Or-

dinary of Chatham County on July 6, 1951. It provided for the payment of his just debts after his death as soon as practicable by his executor. In addition to $5,000 in cash, all of his household furniture and furnishings, silver and silverware, jewelry, wearing apparel, and all other tangible personal assets of a like nature or kind, including any automobile or automobiles he might own at the time of his death, he bequeathed to his wife, Mrs. Callie Mae Joseph, his individually owned residence and the land on which it is located in Savannah, Georgia, absolutely and in fee simple. He gave his sisters, Zahelia Tonous Joseph Owens, $2,000 in cash and his brother, Elias Assad Joseph Owens, a like amount in cash. He gave his pastor $100; his church, $200; and the Little Sisters of the Poor of Savannah, Georgia, $200. Item 11 of his will is in part as follows: "All of the rest and residue of my property of every nature, kind and description and wherever situate of which I die seized and possessed, or to which I may be entitled, including any void or lapsed legacies, devises or bequests, I give, devise and bequeath to The Citizens & Southern National Bank, Savannah, Georgia, its successors, as trustee on the following uses, purposes and trusts, to wit: . . . (2) To pay out of the income of the trust estate the sum of two hundred ($200.00) dollars a month to my said wife, Callie Mae Joseph, said monthly payments to commence on the first day of the first month immediately following my death and to continue during the remainder of her natural life or widowhood. To also pay out of the income of the trust estate, during the remainder of the life of my said wife or her widowhood, all ad valorem city, county and State taxes and assessments on the residence property devised to my wife in item eight of this will. In the event the income from the trust estate is not sufficient to pay said two hundred ($200.00) dollars a month to my said wife and to pay the taxes and assessments on the residence property devised to her, then my said trustee, or the successors, shall encroach on the corpus of the trust estate in amount or amounts necessary to make up any deficiency. On the death of my said wife or in the event of her marriage, said payments are to cease. Any excess income of the trust estate, during the life or widowhood of my said wife, over and above that necessary to pay the monthly instal-

ments of two hundred ($200.00) dollars a month to my wife and the taxes and assessments on the residence property devised to her, shall be paid to my sister, Zahelia Tonous Joseph Owens, and my brother, Elias Assad Joseph Owens, share and share alike. In the event of the death of either of my said sister or brother, or both of them, during the life or widowhood of my said wife, then the share of excess income from the trust estate which my said sister or brother would have received if in life shall be paid to her or his descendants per stirpes, and in the event of the death of either my said sister or brother, during the life or widowhood of my said wife, without leaving any descendant who is in life at that time, the share of the excess income which she or he would have taken if in life shall go to the survivor, or her or his descendants, as the case may be, per stirpes. The payments of any excess income from the trust estate shall be made every six (6) months." On the death of Mrs. Joseph or in the event of her remarriage, the will provides for the payment of the remaining balance of the trust estate in a described manner to the testator's brother and sister, and in the event of their respective deaths or the death of either, in a prescribed manner to their descendants per stirpes.

The plaintiff and B. A. Joseph were married January 22, 1912. At that time she was a school teacher and had $500 in cash, which she brought into the marriage. Her husband, at that time, had no money and could neither read nor write English though possessed of native ability and intelligence. At her husband's request, she turned over to him the $500 as and for the initial capital for a business venture. They agreed with each other that they would devote their time, labor, and effort to business undertakings thereafter to be engaged in jointly by them; that they would hold, manage, and own their business undertakings together as joint owners; and that the profits, earnings, and investments derived therefrom, other than for specific individual appropriations which would be agreed upon from time to time, would become their mutual property and be likewise held by them, with her husband consenting to and recognizing her right to receive, own, and hold her undivided half interest in the same in her own right and as her separate estate. She trusted her husband implicitly to protect her interest under the arrange-

ment, and therefore accepted without question the acquisition and operation of the various business enterprises thereafter acquired by them and the investment of the profits, earnings, and proceeds therefrom in the individual name of her husband, who at all times recognized and acknowledged to her and others that he was largely dealing with the proceeds and profits derived from her savings and the contribution made by her to their business endeavors, in which she held and enjoyed an equal interest and voice with him. She and her husband were jointly engaged in business undertakings for nearly forty years, during which period she spent her full time in keeping records and accounts, attending to all the financial details of their many business ventures, purchasing and maintaining their stock in trade, assisting her husband in waiting on customers and joined with him in making all decisions necessary for a successful operation of their business ventures. Their hours were long and hard and their business undertakings were conducted with but little, and frequently without any hired help or assistance. As their various business operations produced profits, the surplus was from time to time withdrawn by her and her husband and by them invested in stocks, bonds, and real estate or in savings accounts pending investment opportunities, with her husband at all times recognizing her equal voice in the determination and type of investment to be made. She attached to her petition, as exhibit "B", a schedule of the business investments which were jointly and equally owned by them at the time of her husband's death, but which they had acquired by mutual agreement in the name of her husband, having an aggregate value of approximately $65,-000. During the last several years preceding her husband's death, and while she was engaged in the management and maintenance of their investment properties and caring for her husband, who was then in failing health, he became subject to the influence and partial domination and control of his brother, Elias Assad Joseph Owens, and his sister, Zahelia Tonous Joseph Owens, who by divers means of communications, letters, and artifices sought to and did unduly influence him into giving them large sums of money which he appropriated, without her knowledge and consent, from their joint funds and of which she did not learn until after his death, amounting to a sum in excess of

$5,000, for which she is entitled to an accounting. Her husband, without her knowledge and consent, during the last several years of his life also appropriated to his own use from their joint funds a sum of at least $9,000, for which she is entitled to an accounting. A demand has been made upon her husband's executor, Citizens & Southern National Bank, for her property and for an accounting to her for the funds withdrawn by her husband from their joint and equally owned property, and compliance with her demand has been refused. The prayers were: (a) for process; (b) that a trust be imposed upon petitioner's undivided interest in all and singular the business and rental properties, bank accounts, stocks, bonds, and choses in action as referred to and described in the schedule of said property as set forth in exhibit "B", which is attached to and made a part of the petition; that a partitioning in kind or amount thereof be decreed, set forth, and segregated to her as a part of her own separate estate; (c) that the defendant be required to assign and transfer to her the legal title in such of the trust property to which it is determined she is entitled; (d) that the defendant be required to account to her for the diversions and appropriations made by B. A. Joseph from their joint property during his lifetime to the extent of her undivided interest therein; that she have judgment therefor; and that her judgment be decreed an equitable lien upon the estate of her deceased husband; (e) that the defendant be required to account to her for the original $500 furnished by her together with the increments and profits arising therefrom with interest at 7 percent per annum from the date of its delivery to him in case the profits and increments therefrom cannot be traced and determined; (f) that the defendant, as such executor, be required to account to her for all proceeds, profits, dividends, interest, and other monies belonging to her and consumed by her husband that cannot be traced; (g) that the defendant be enjoined from paying any sums of money as excess income from her husband's estate over and above the amounts devised to her under the provisions of his will pending final determination of this cause; (h) and that she have such other and further relief in the premises as to the court may seem meet and proper.